*In the matter of the Petition of* T. S. BOZEMAN, *for a Writ of Habeas Corpus.*

1. BRIBERY—*Attempt—Scope of Statute.* The language of ½ 198 of the crimes act (page 351, Comp. Laws of 1885) is comprehensive and the scope thereof broad enough to include the officers of a school district, or any other officer or person in the cases referred to in the preceding sections of the act.

2. LIGHTNING-RODS—*School House—Attempt to Bribe.* It is an offense under ½ 198 of the crimes act (Comp. Laws of 1885) for a person to attempt to bribe a member or the members of a school board of a school district to induce the making of a contract to put up lightning-rods on the school-house of the district.

*Original Proceeding in Habeas Corpus.*

ON the 3d day of September, 1889, there was filed in the district court of Meade county, against *T. C. Bozeman,* an information in the following words and figures, omitting caption, signature, and verification:

"I, R. W. Griggs, the undersigned, county attorney of said county, in the name, by the authority and on behalf of the state of Kansas, come now here and give the court to understand and be informed that on the 20th day of August, 1889, in said county of Meade and state of Kansas, one T. S. Bozeman did then and there unlawfully, and feloniously and corruptly offer to bribe an officer; for that one George W. Ragon was then and there a member of the school board of School District No. 4, in Eden township, Meade county, Kansas, and being then and there the duly elected, qualified, and acting treasurer of said board, and being then and there a duly elected and qualified member of said board; that the defendant, T. S. Bozeman, then and there unlawfully, feloniously and corruptly contriving and intending to induce the said George W. Ragon, as such treasurer, and as such member of said board of said school district, to betray the duties of his said office of treasurer and as such member of said school board; and the said T. S. Bozeman then and there unlawfully, feloniously and corruptly contriving and intending to induce the said school board to betray the duties of its organization, did then and there offer to the said George W. Ragon, and to him as such treasurer and as a member of said school board, and for the purpose of defrauding said district, that he, the said T. S. Bozeman, would pay to him, the said George W. Ragon, the sum of twenty-five dollars as a bribe and pecuniary reward to influence him, the said George W. Ragon, and as such officer and member of said school board, and to influence and induce said board to permit him, the said T. S. Bozeman, to put lightning-rods upon the school building in said school district at the price of sixty-seven and one-half cents per lineal foot, and to induce in payment therefor the issuance of school orders of said school district by said school board; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Kansas."

On the 23d day of September, 1889, a writ of *habeas cor-*

*pus* was sued out of this court on behalf of Bozeman. On the 3d day of October, 1889, the sheriff of Meade county filed his return to the writ, showing that Bozeman was restrained of his liberty under the commitment for the offense of offering to bribe an officer. A hearing was had upon the writ and return at the October session of this court for 1889.

*Samuel Lawrence*, and *W. C. Webb*, for petitioner.

*R. W. Griggs*, county attorney, for The State.

The opinion of the court was delivered by

HORTON, C. J.: It is contended that the facts set forth in the information do not constitute any public offense, and that the information cannot be so amended that the provable facts will meet the objections taken against it. In support of this it is claimed: First, that it does not appear from the information that a member of the school board is a public officer within the meaning of §§ 193 or 198 of the crimes act; and second, that whether he be such an officer or not, there was not any public or official duty devolved by law upon George W. Ragon, as a member of the school board, respecting the performance or non-performance of which there was an attempt to bribe him. It is said that school directors and other officers of a school district are not officers of the state or of any county any more than county officers are state officers, or than state officers are county officers; that while the term public officer includes all officers appointed or chosen under the law, yet classification, as federal officers, state officers, county officers, township officers, city officers, and school-district officers, is too well fixed and too well recognized to require argument that the designation of any one of these particular classes must exclude it from any other class than the one so designated; hence that § 198 has reference only to state officers and county officers, those two classes of public officers only being named in § 193.

Again, it is said that the district board had no lawful authority to contract with Bozeman for the erection of lightning-

rods upon the school building without having affirmative authority by a vote of the electors of the district; and not being within the scope of their authority, the acts complained of did not come within any of the cases mentioned in § 193 of the crimes act.

Section 193 reads:

"Every person who shall, directly or indirectly, give any money, goods, rights in action, or any other valuable consideration, gratuity or reward, or any promise, undertaking or security therefor, to any officer of this state or of any county: First, with intent to influence his vote, opinion, judgment or decision of any question, matter, cause or proceeding which may be then pending, or may be by law brought before him in his official capacity, or to induce him to neglect or omit the performance of any official duty, or to perform such duty with partiality or favor, otherwise than is required by law; or, second, in consideration that such officer hath given any vote, opinion, judgment, or decision, in any particular manner, upon any particular side, or more favorable to one side than the other, in any matter, question, cause, or proceeding, or hath omitted to perform any official act or duty, or hath performed such act or duty with partiality or favor, or otherwise, contrary to law, shall, on conviction, be adjudged guilty of bribery, and be punished by confinement and hard labor for a term not exceeding seven years."

The information, however, is founded upon § 198 of the crimes act, which provides:

"If any person shall, by any of the means mentioned in the preceding sections of this act or otherwise, offer or attempt to bribe any officer or other person, in any of the cases hereinbefore mentioned, he shall, upon conviction, be punished by confinement and hard labor for a period not exceeding five years, or by imprisonment in the county jail for a term not exceeding one year, and a fine not less than one thousand dollars."

Said § 198 refers to the offer or attempt to bribe any officer or other person. These officers or persons are not merely officers of a state, or of a county. The language in said § 198 is comprehensive, and the scope thereof is broad enough to include the officers of a school district, or any other officer or

person in the cases referred to in § 193. The expression in § 198, "by any of the means mentioned in the preceding sections of this act," refers to the language in § 193, which reads as follows: "Every person who shall, directly or indirectly, give any money, goods, rights in action, or any other valuable consideration, gratuity or reward, or any promise, undertaking or security therefor;" and the language in said § 198, to the effect that "in any of the cases hereinbefore mentioned," refers to numbers 1st and 2d in § 193: therefore, the crime of offering or attempting to bribe any officer or other person under § 198 includes school district-officers, as well as state and county officers.

As to the other objection to the information, Wharton says: "The offense of attempting to bribe is complete when an offer is made, although in a matter not within the jurisdiction of the officer." (2 Crim. Law, § 1857.)

Mr. Justice Dalrimple, speaking for the court, said, in *The State v. Ellis*, 33 N. J. L. 102:

"It is contended in the next place, that the facts set forth in the indictment constitute no offense, inasmuch as the common council had not jurisdiction to grant the application for which the vote was sought to be bought. In my opinion, it is entirely immaterial whether council had or had not jurisdiction over the subject-matter of the application. If the application was in point of fact made, an attempt to procure votes for it by bribery was criminal. The offense is complete when an offer of reward is made to influence the vote or action of the official. It need not be averred that the vote if procured would have produced the desired result, nor that the official or the body of which he was a member had authority by law to do the thing sought to be accomplished. Suppose an application made to a justice of the peace in the court for the trial of small causes, for a summons in case of replevin, for slander, assault and battery, or trespass, wherein title to lands is involved: over these actions a justice of the peace has no jurisdiction, and any judgment he might render therein would be *coram non judice*, and void. Yet I think it can hardly be contended that a justice thus applied to may be offered, and with impunity accept, a reward to issue a summons in any case without his jurisdiction. If the common council of Jersey

City had not authority to grant the application referred to, the act of the defendant in endeavoring to procure the grant asked for was only the more criminal, because he sought by the corrupt use of money to purchase from council an easement which they had no authority to grant. He thereby endeavored to induce them to step beyond the line of their duty and usurp authority not committed to them. The gist of the offense is said to be the tendency of the bribe to pervert justice in any of the governmental departments — executive, legislative, or judicial. (2 Bishop's Crim. Law, § 86.) Would it not be a plain perversion of justice to buy the votes of councilmen in favor of a surrender of the streets of the city for the purposes of a railroad, when such surrender is unauthorized by law? The rights of the citizens of the municipality thus corruptly tampered with and bargained away might be regained after a long and expensive litigation, or in some other mode; nevertheless, bribery and corruption would have done, to some extent at least, their work, and the due course of justice have been disturbed."

But it cannot be said that a school board has no authority under our statute to contract for a lightning-rod to a school-house. Section 57, chapter 92, Comp. Laws of 1885, reads:

"The district board shall provide the necessary appendages for the school-house during the time a school is taught therein, and shall keep an accurate account of all expenses thus incurred, and present the same for allowance at any regular district meeting."

It is probable that a lightning-rod might be considered a "necessary appendage for a school-house." In *Hemme v. School District*, 30 Kas. 377, an appendage to a school-house was construed to include a well constructed on the premises on which the school-house was situated. Mr. Justice VALENTINE, in that case, referring to the foregoing statute, said:

"Unless this language can be construed so broadly as to authorize the school board to construct a well, or a fence, or a privy upon the grounds upon which the school-house is situated, it would seem that neither the board nor the school district itself has any authority to construct any such improvements. We would therefore think that the legislature must have used the word 'appendage' in said § 25, and also in subdivision 5, § 11, art. 3 of said chapter, in a very broad

and comprehensive sense, and intended to include these improvements as well as many other things which might come within the general definition of 'appendages.' Webster defines the word 'appendage' as 'something added to a principal or greater thing, though not necessary to it, as, a portico to a house.' Worcester defines the word as 'something added, attached, or annexed; a concomitant.' As before stated, we think the word ought to be construed broadly, so as to include a well constructed on the same premises on which the school-house is situated; and therefore we think the court, instead of instructing the jury that a well is not a necessary appendage to a school-house, should have left the question as to whether it is a necessary appendage, or not, to the jury."

The case of the *Monticello Bank v. District Township*, referred to in 51 Iowa, 350, is not clearly applicable, because it does not appear that the Iowa statute is in terms exactly as our statute.

We think upon the matters presented, that the prisoner must be remanded for trial.

All the Justices concurring.