## THE STATE *v.* W. G. BUNGER.

| 11 | 607 |
|----|-----|
| 45 | 662 |
| 11 | 607 |
| 50 | 263 |

Where a person states, when examined on his *voir dire*, that he has formed and expressed an opinion relating to the guilt or innocence of the prisoner, and that it might bias him in forming an opinion after having heard the testimony—that direct evidence only would change his opinion —that circumstantial evidence would not—he should be rejected as incompetent to act as a juror, although he should further state that the opinion he has formed is not so fixed that it could not be changed by the evidence which might be adduced on the trial—that he thought he could do justice between the State and the prisoner—and that the opinion he had formed would not influence his mind as a juror. As to the appointment of triors, when there is a challenge to a juror, although such a request is unusual in this State, it should be allowed on the request of the prisoner.

The power to grant a change of venue is confided to the District Courts exclusively, and the exercise of it is not subject to revision by the Supreme Court.

APPEAL from the District Court of the parish of Franklin, *Barry,* J.
*Stubbs,* District Attorney, for the State. *Crawford,* for defendant and appellant.

SPOFFORD, J. The prisoner was convicted of murder, and sentenced to death.

Upon appeal to this court, he complains that the District Judge erred, to his prejudice, in refusing to set aside certain jurors challenged by him for cause.

Amongst others, one *Jesse M. Randolph* was called as a juror, who, when examined upon his *voir dire,* answered as follows:

"*Interrogatory.* Have you formed and expressed an opinion relating to the guilt or innocence of the accused?"

"*Answer.* I have formed and expressed an opinion."

"*Int.* Would what you have heard, and the opinion you have expressed, bias or prejudice your opinion as a juror, after hearing the evidence?"

"*Ans.* I think it might bias my opinion. I don't think it would prejudice me—not intentionally."

"*Int.* Could you decide this case from the evidence that may be given on the trial, without being influenced by what you have heard?"

"*Ans.* If the evidence should be positive and point-blank against what I have heard, I might change my opinion, but it would have to be positive and point-blank."

"*Int.* Would circumstantial evidence, different from what you have heard, change your opinion?"

"*Ans.* No. It would have to be positive. If positive evidence went against a part of what I have heard, it would change my mind so far as it went, and if it contradicted the whole of what I have heard, it would change my opinion about the case."

The bill of exceptions further recites that, in answer to questions propounded by the District Attorney, the juror said: "That the opinion he has formed is from what he has heard of the case; that the opinion he has formed, and what he has heard of the case, would not prejudice his mind as a juror; it might bias his mind unintentionally and imperceptibly on his part; believes that, after hearing the evidence, he could give the accused a fair and impartial trial, without his mind being influenced by what he heard, or the opinion he has expressed."

And in answer to the court, the juror says: "That he has formed and expressed an opinion in relation to the guilt or innocence of the accused from what he has heard; has heard a good deal said about the case; has heard the matter spoken of before the witnesses, but does not recollect to have heard the witnesses themselves speak of it; states that the opinion he has formed is not so fixed that it could not be changed by the evidence which may be adduced on the trial, should it be different from what he has heard; thinks he could do justice between the State and the accused; believes the opinion he has formed would not influence his mind as a juror."

Thereupon the court overruled the principal challenge of the prisoner to this juror, and decided that he was competent; to which ruling the prisoner excepted.

It is manifest that the Judge erred. The process of interrogation by which the juror was gradually led to contradict his first answers relative to the bias upon his mind, is not disclosed; but the questions put by the prisoner's counsel, which we have already quoted from the bill of exceptions, were fair, clear and pertinent. The answers were equally explicit, admitting a deliberately formed and expressed opinion on the part of the juror; an opinion which, it appears, was not formed and expressed upon vague rumor, but from hearing a great deal said about the case, and hearing it talked of in presence of the witnesses; an opinion so decided and absolute that it could not be changed by any circumstantial evidence whatever; an opinion that could be affected only by positive and point-blank testimony, contradicting the unsworn statements upon which it had been formed; an opinion which the juror felt to be so strong that he twice stated it might bias his mind.

We find no authority in the books, and have been referred to none by counsel for the State, which supports the ruling of the District Judge relative to the competency of the juror upon this subject. See Wharton's Crim. Law, p. 843; *State* v. *Brown,* 4 An. 505.

The verdict must, therefore, be set aside, and a new trial trial awarded.

We are of the opinion that a change of venue is a matter confided to the District Courts exclusively, and is not subject to revision by this court.

As to the appointment of triors, when there is a challenge to the juror, although such a request is unusual in this State, we think it should be allowed upon the request of the prisoner. It was the English practice, and our statute of 1805 adopted the common law of England as a guide in criminal procedure.

Such seems also to be the practice in other States of the Union. 1 Chit. Cr. Law, p. 549; Wharton's Cr. Law, p. 861.

In remanding the cause, we feel constrained to remark that the transcript betokens a degree of negligence which it is painful to see exhibited in so serious a matter.

There is no record of the empannelling of a grand jury, nor does it appear who composed the grand jury which preferred the bill of indictment. According to a bill of exceptions, the list of jurors served upon the prisoner seems to have included the grand jurors, who could not be permitted to pass upon his trial. And the jurors who did pass upon the trial, at intervals during its progress, had free admission to a grog-shop, where other persons were congregated.

Too great caution cannot be observed by the ministers of justice in conducting a capital trial according to settled rules of law and practice. It was said by the District Attorney that this is a case of peculiar attrocity. Of that we can form no opinion, for the law does not permit the facts of a criminal case to come under our cognizance, and when a party accused has not been convicted according to law, we are bound to presume his innocence. At the same time, we may say that when the accused is really guilty of a heinous crime, those officers who, through heedlessness, suffer errors to creep into the proceedings which enable him to escape, incur a momentous responsibility to the public.

It is ordered, that the judgment of the District Court be avoided and reversed, the verdict of the jury set aside, and the cause remanded for a new trial according to law.