## No. 939.

### STATE OF LOUISIANA VS. JULES GUIDRY.

Defendant was entitled to have a copy of the *renire* served upon him, and this was done. All of the persons named thereon did not answer to the summons, but that was because they were either excused or could not be found. The law was complied with when the *renire* was served upon him.

The judge *a quo* was right when excusing several jurors who could not understand the English language. This discretionary power he had under the first section of act No. 94 of the acts of 1873.

On the trial of the exceptions filed by defendant, he offered to prove that, in drawing the *renire*, ballots were placed in the box containing the names of all persons who were on the registration list, including those who had served at previous terms of the court within the last three years next preceding the present term. Admitting the fact to be as stated, the defendant suffered no wrong thereby, for he does not complain that they are incompetent jurors. What he urges is no objection to them as jurors. They might have caused themselves to be discharged, but the cause of discharge was personal to themselves.

The court did not err in allowing Burleson to be sworn as a juror. He swore, it is true, on his *voir dire* that he had " conversed about the matter with some of the eye-witnesses to the killing charged against the accused in this case, and that he had formed an opinion as to the guilt or innocence of the accused ;" but he also said that " his opinion was merely imaginary and was not a fixed opinion, but would yield to the evidence, and that he felt satisfied he could try the case fairly and impartially according to the evidence." He was a good juror.

The same may be said with regard to the juror Collins. He had expressed an opinion, but he said that opinion was founded upon hearsay, and that his opinion would yield to the evidence.

There is nothing in the exception that the talesmen had not been summoned and called to be sworn until after the regular jury had been finally discharged. The talesmen could only have been summoned after the panel was exhausted, and there is no good reason why the judge, after the panel had been exhausted, should not discharge the jury if he had no other cases for them to try without waiting until the talesmen had been summoned and sworn.

APPEAL from the Eighth Judicial District Court, parish of Calcasieu. *Morgan*, J. Criminal case. *George W. Hudspeth*, district attorney, for plaintiff and appellee. *F. A. Gallaugher* and *Lewis Lévèque*, for defendant and appellant.

MORGAN, J. The accused, indicted for murder, and found guilty as

·charged in the indictment, appeals from the judgment of the court, which inflicts upon him the extreme penalty of the law.

When the case was called in the district court, the defendant, objected to going to trial—

First—Because the list of jurors served upon him is incorrect, and tends rather to mislead than to guide him, as it contains the names of thirty-seven jurors, seven of whom had never been summoned and could not expect to be present, and three of whom had been excused by the ·court.

Second—Because five jurors were excused and discharged by the court on the ground that they could not understand English, which, he says, was no legal objection to their competency; that they were excused without his knowledge or consent, and without allowing him an opportunity to examine them, and that he has good reason to believe that they would have made competent jurors, and that he did not believe that he could secure a fair and impartial jury from the remaining jurors, and that he will be thus deprived of his rights to be tried by a jury summoned from the body of the parish, as talesmen will be summoned from the vicinity of the court-house.

The statement of facts shows that seven of the jurors whose names were on the list furnished to the defendant were never summoned, as :they could not be found in the parish; that four of the jurors were ex-cused because they did not understand English either when read or .spoken, and that they were excused without the knowledge of the de-fendant; that one of the jurors was excused after a copy of the venire had been served on the defendant, the juror claiming exemption because he had served within twelve months preceding the last term of court; that of the seven absent jurors domiciliary service had been made on two of them; but that of these two one owns no residence in the parish, and works wherever he can find employment, and that when the sub-poena was left for him he was out of the parish.

These objections are not good. As to the venire, he was entitled to a copy of it, and a copy was furnished him. All of the persons named thereon did not answer to the summons, but that was because they were ·either excused or could not be found. But the law was complied with when the venire was served upon him.

As to the course of the judge in excusing several of the jurors because they could neither read nor understand the English language, he was right. No man can be said to be a competent juror to sit in judgment upon a man whose life is at stake who can neither read nor understand the language in which the law is written which is to decide his fate, or :the pleadings under which the crime is laid to his door. The juror

might as well be deaf and dumb. Besides, the first section of the act No. 94 of 1873 gives to the judge this discretion.

On the trial of the foregoing exception the defendant offered to prove that, in drawing the *venire*, ballots were placed in the box containing the names of all persons who were upon the registration list, including those who had served at previous terms of the court within the last three years next preceding the present term. Admitting the fact to be as stated, the défendant suffered no wrong thereby, for he does not complain that they are incompetent jurors. What he urges is no objection to them as jurors. They might have caused themselves to be discharged, but the cause of discharge was personal to themselves.

The court did not err in refusing to allow one of the jurors of the regular panel to sit on the trial of this case, because he could not read, or write, or understand the English language. This we have before stated with regard to other jurors. And whether he could or could not understand the language was a question of fact which it was for the district judge to determine.

Neither did he err in allowing Burleson to be sworn as a juror. He swore, it is true, on his *voir dire* that he had " conversed about the matter with some of the eye-witnesses to the killing charged against the accused in this case, and that he had formed an opinion as to the guilt or innocence of the accused." But he also said that " his opinion was merely imaginary, and was not a fixed opinion, but would yield to the evidence, and that he felt satisfied he could try the case fairly and impartially according to the evidence." He was a good juror.

The same may be said with regard to the juror Collins. He had expressed an opinion, but he said that this opinion was founded upon hearsay, and that his opinion would yield to the evidence.

The regular panel having been exhausted, the judge ordered the sheriff to summon forty-five talesmen from different portions of the parish, and then discharged the petit jury for the term. The defendant objected to being tried by the talesmen thus summoned, on the ground that the talesmen had not been summoned and called to be sworn until after the regular jury had been finally discharged.

There is nothing in this exception. The talesmen could only have been summoned after the panel was exhausted, and we see no good reason why the judge, after the panel had been exhausted, should not discharge the jury if he had no other cases for them to try, without waiting until the talesmen had been summoned and sworn.

The defendant moved for a new trial " for the reason that the verdict is contrary to the law and the evidence, and because the verdict was occasioned by the great prejudice existing against him in the community, and of which he was ignorant, before going to trial."

There is nothing in this application which shows that the district judge erred in his refusal to grant the new trial.

One by one we have examined and carefully considered the objections which the defendant has made to the trial the result of which is to bring him to a sad end. One by one we have been forced to overrule them, and we see no good grounds for interfering in his behalf, averting from him the doom which a jury of his peers have said he has, by violating the laws of God and man, brought upon himself.

Judgment affirmed.