(42 South. 960.)

No. 16,378.

STATE v. CARON et al.

(Jan. 7, 1907.   Rehearing Denied Feb. 4, 1907.)

1. JURY—JURORS ON VOIR DIRE.

The jurors excluded on their examination on their voir dire were related to the accused, or the examination showed that on the score of friendship or other similar influence it was advisable to refuse to accept them as jurors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Jury, §§ 413–415, 432.]

2. SAME—BIAS.

The mind of the court, and not of the juror, must be satisfied that the challenged juror is free from bias.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Jury, § 594.]

3. SAME—PEREMPTORY CHALLENGES.

Six peremptory challenges are allowed to the state, and 12 to each of the defendants, where there are several on trial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Jury, §§ 610–614.]

4. CRIMINAL LAW — OPINION EVIDENCE — WITNESS TESTIFYING AS TO CAUSE OF DEATH.

A nonexpert witness can be examined regarding the cause of death; it being evident that the cause was one which was evident to an ordinary person.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1052.]

5. SAME—ABSENT WITNESS.

Testimony admissible which accounts for the absence of a witness whose testimony was material.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 802, 802½.]

6. WITNESSES — EXAMINATION BY COURT — QUESTION BY COURT.

The court has the right, in directing the course of the proceedings, to propound questions without regard to objections.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 852–857.]

7. SAME—EXAMINATION.

The court has it in its power to prevent useless delays in the course of the trial and the course of examination that does not tend to throw light on the issues of the case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 789, 792–796.]

8. WITNESSES—CROSS-EXAMINATION.

The witness may be examined in regard to a course of conduct on his part that would have a tendency to discredit his testimony.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 1135–1142.]

9. CRIMINAL LAW—STATEMENT.

That which a witness has said ordinarily can be much better proven by an examination of the person by whom it was said.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 973.]

10. SAME—INSTRUCTIONS NOT APPLICABLE.

The court is not obliged to instruct the jury regarding law not applicable to the case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1979.]

11. SAME—OTHER SPECIAL CHARGE PROPERLY REFUSED.

All points decided correctly, except the eighth, as above numbered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 2011.]

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Clay Elliott, Judge.

Bud Caron and Hines Hughes were convicted of murder, and appeal. Reversed and remanded.

Duncan Stuart Kemp, William Breed Kemp, and Marion Wallace Davidson for appellant Caron. Thomas Milton Bankston and Thomas Philip Simms for appellant Hughes. Walter Guion, Atty. Gen., and Robert Stephen Ellis, Dist. Atty. (Robert Raymond Reid, Lewis Guion, Brittain Birdsong Purser, and Columbus Reid, of counsel), for the State.

BREAUX, C. J. Defendants appealed from a verdict and sentence condemning them to serve at hard labor in the penitentiary during their natural lives.

They were charged with murder in an indictment filed on the 19th day of September, 1906, for the homicide of Eugene McClendon on the 11th day of August of the same year.

They were arraigned, pleaded not guilty, and the case was taken up for trial on the 15th day of October, 1906, and the trial resulted in a verdict of "guilty without capital punishment."

A number of questions are before us for decision.

A number of bills of exceptions were re-served to the court's ruling. Eighteen were signed by the trial judge. He refused to sign the nineteenth.

### Three Jurors were Ordered by the Court to Stand Aside on Challenge of the District Attorney for Cause.

Three bills of exceptions were taken to the court's ruling in passing on the competen-cy of as many jurors, who were declared in-competent.

In the first bill of exceptions, the venire-man called on his voir dire was a cousin in the third degree of the wife of one of the accused. He was challenged for cause by the district attorney and his challenge was sustained.

Regarding the next juror, also challenged for cause by the district attorney, there was relationship between members of his family and the family of one of the defendants.

As relates to the third juror, he was or-dered to stand aside. He had resided in Kentwood, the home place of one of the de-fendants. He had been his neighbor. He had conversed with persons who knew some-thing of the particulars of the case. The court thought that he did not stand indif-ferent.

The relationship was sufficient to set aside those who were related. Merriam & Thomp-son, § 178.

The following is a statement from Chitty as to what is deemed the principal cause of challenge:

"If, therefore, the juror is related to either party within the ninth degree, though it is only by marriage, a principal challenge will be admitted. So, also, if he has acted as god-father to the prosecutor of the defendant, he may be challenged for that reason."

This is the rule of the common law, which is at any rate persuasive. If not to the ninth degree, it is conclusive at least to the fourth degree.

These excluded jurors stated, in answer to questions by the defense, that they would render an impartial verdict.

The decisions have repeatedly held that it is within the province of the trial judge to determine whether the juror should be sworn.

The juror's oath that he will be impartial and perform all the duties devolving upon him as juror cannot be substituted to the ruling of the court. It is said that the mind of the court, and not of the juror, must be satisfied that the challenged juror is free from bias and prejudice. Proffatt on Jury Trials, § 176.

Moreover, it was not shown that defend-ants were compelled to accept an obnoxious juror. This, in addition to other grounds, should have been overruled and shown.

### Number of Challenges Allowed the State under Statute.

The next point urged by the accused is that the court erred in allowing more than six peremptory challenges to the state.

Prior to Act No. 135, p. 223, of 1898, § 14, it was well settled by legislative enactment and repeated decisions that, where the pun-ishment at hard labor was for 12 months or more, the defendant had 12 and the state 6 peremptory challenges.

In order to meet the changed condition un-der the new statute, which contained provi-sions to try minor offenses before a jury of 6, the statute of 1898 was enacted, which provides (in the class of cases just referred to) for a reduction to 6 challenges for the de-fendant and 3 for the state, and in cases in which the punishment is necessarily at hard labor the number of peremptory challenges was 12 for the accused and 6 for the state.

In the present case the accused exhausted the 24 challenges which they had. They none the less urge that the state was entitled to 6 challenges only.

In all fairness, it does appear that, if the word "accused" limits the number of per-emptory challenges of the state, those of the

defendant should not be' over 12; for the word "accused," as used, is made to apply to the defendant, as well as to the state. If the word "accused" must be considered as relating to one accused in so far as the state is concerned, it should, it seems to us, be limited to one accused in so far as defendant is concerned.

Defendants' contention has, we must say, some appearance of being one-sided. As to them the statute would mean by the word "accused" as well more than one as it does one, but as to the state it would mean as if only one was on trial.

It is difficult to assume that by the word "accused" (referring to one or more than one) the Legislature intended to change the old law.

The purpose in allowing challenges is impartiality. The great end of civil society is justice and impartiality. The state and the accused in criminal cases are allowed challenges without urging reason, in order that each may avoid accepting jurors who are suspected of partiality. The state would be placed at a disadvantage in cases in which the number of accused is more than one, if defendants' theory is correct.

Unless it be made to appear with some degree of certainty that it was the intention of the Legislature to reduce the number, the law as heretofore interpreted should be enforced. It cannot be assumed that the Legislature intended to lessen the number of challenges. The word "accused" may refer to one, or it may refer to several. The use of the word is taken as intended to include the larger, as well as the less, number.

We extract the following:

"Challenges are of high importance. Acting on this principle, the prosecution in a majority of our states has the right of peremptory challenge to a limited amount, generally half the number allowed the prisoner, in a few cases the same number, and, where it is not expressly granted, judicial construction favors by implication the privilege, if it can in any way be granted." Proffatt on Jury Trial, p. 161, § 161.

118 LA.—12

### Cause of Death Ordinarily may be Proven by Nonexpert Testimony.

In another bill of exceptions the defendants objected to the testimony of a witness on the ground that he was not a medical expert, and in consequence could not testify as to the cause of death.

The district attorney propounded the question:

"What was the cause of death of the deceased, McClendon?"

to which the defendant objected, as above stated.

The witness to whom the question was propounded, we take it, was called upon to state facts within his knowledge regarding the cause of the death of the one whom defendants were charged with having killed, and we infer that the district attorney did not expect him to testify as an expert, as in a case in which it requires the expert to determine the cause of death. In other words, he was not called upon to give his testimony as an expert. He was an ordinary witness, who testified regarding the cause of the death within his knowledge.

### Accounting for the Absence of a Person Who was Present at the Homicide.

Another bill of exceptions was taken to the ruling of the court in permitting the prosecuting officer to ask a witness regarding the whereabouts of the negro Ike, who worked in the livery stable of the deceased, on the day of the homicide.

In the light of the per curiam of the trial judge the testimony was admissible. The course of the examination had taken a turn which justified the inquiry, as stated in the per curiam. It was pertinent under the circumstances, we are informed. The statement of the judge disposes of the objection.

### Comments by the Court.

The defendants complained of the court's ruling, as stated in another bill of exceptions,

excluding the following question asked by counsel for defendants:

"Did you ever see Ed. Godchaux?"

The complaint is that no objection was raised by the prosecuting officer on which to base the ruling; that the ruling was made ex proprio motu by the court.

The per curiam sufficiently explains why the ruling was interposed. The court states that the district attorney was in the act of speaking when the court spoke. The question was a repetition of a prior question, and was irrelevant; and, as to comments, if any could be construed as in the least intimating anything prejudicial to the accused, he instructed the jury not to give it consideration in that light.

### Another Question Excluded.

Again, at another time and in another bill before us for review, it seems that defendants' counsel asked a witness:

"Will you please repeat the testimony that you gave on your direct examination by the state?"

The court did not permit the question, on the ground that further testimony was not necessary, and it was a useless consumption of time; that the witness had answered all questions asked him before; that he had to interfere, as stated; that, when counsel claimed he had commented on the evidence, he instructed the jury that no comment on the evidence was intended, and not to consider the court's remarks as such.

The case being a capital one, we deemed it proper to review the point. It presents no ground for discussion. It has no merit.

### Question Regarding Offer to Testify to Anything.

Passing from the foregoing, we take up another bill of exceptions. As it is important, a full reference to it is inserted here:

On cross-examination, defendants' counsel asked one of the witnesses for the state re-

garding an asserted offer of the witness to swear to anything that would be of benefit to his brother, who was charged with larceny, and whose case had been tried about a year prior. This witness was a witness in that case, and the defendant was acquitted. Counsel for Hughes, one of the defendants—

"Stated that the purpose was to fix time and place, and to show that witness offered to swear, in the case entitled 'State of Louisiana v. Allen Raven Croft,' in which Messrs. Simms and Kemp were of counsel for accused, to anything that was necessary to the defense of Allen Raven Croft, and that the question was for the purpose of affecting the credibility of the witness."

The objection of the prosecuting officer was that the credibility of a witness can be impeached by contradictory statements only relating to matters under investigation, proof of his general character, or reputation for truth and veracity; that the matter in regard to which it was proposed to question the witness was not even remotely connected with the issue of the case before the court.

The court, in ruling, stated that the brother of the witness had been accused, was tried before him without a jury, and acquitted; that the witness had been a witness for his brother, as stated, but that he thought that a witness could not be questioned concerning irrelevant matters, merely to be contradicted; that a witness can only be impeached by showing contradictory statements concerning the subject-matter, made out of court, or by evidence touching his general character or his reputation for veracity; that the manner of the attack was objectionable; that one of the counsel, Mr. Simms, in the pending case, defended the accused in the case of larceny, in which the witness to whom the question here was propounded was placed on the stand, and his credibility indicated by thus calling him as a witness, it was not stated that Mr. Simms would take the stand as an impeaching witness, and the name of the person who would

swear to impeach the witness was not mentioned; that he could not suppose that any person would make such impeachment, unless secretly.

This question was asked in the latitude of cross-examination, and, after hearing the purpose and argument, he considered the objection above mentioned well taken; but, even if it was not, he considered that the way in which it was proposed to attack the witness more harmful to justice, if heard, than it would be to leave it unheard.

True the court may exclude questions which have no tendency to put to test the credibility of a witness.

But principle and authority hold that the right of cross-examination must not be unduly restricted.

The question here is whether the answer, if affirmative, would affect the credibility of the witness.

A witness may be cross-examined in regard to conduct on his part which would have the tendency to discredit his testimony before the jury. His moral character and credit may be impeached, when the cross-examination on that line will assist the ends of justice.

The text of Best on Evidence and in a note of the work, is clear and pronounced. Page 632.

The text of Roscoe, an eminent authority, also holds that a witness may be questioned, on cross-examination, not only in regard to the subject of inquiry, but upon any other subject, however remote, for the purpose of testing his character, his credibility, and his memory. Roscoe, 136 (Sharswood's 6th Am. Ed. 133).

A liberal range of inquiry was held proper in Stevens v. Beach, 12 Vt. 587, 36 Am. Dec. 359; Perkins v. Adams, 5 Metc. (Mass.) 44; Hathaway v. Crocker, 7 Metc. (Mass.) 266; Langley v. Wadsworth, 99 N. Y. 61, 1 N. E. 106.

The court said in the last case, in substance, they are relevant facts.

In another case the court held that a person who believes that he is under no moral obligation to tell the truth is unworthy of belief at any time. Such evidence does not prove bad character from particular facts and is not objectionable on that score. Cheeseborough v. Hunter, 1 Hill (S. C.) 258 (*400).

Both the plaintiff and the defendants in this case cite State v. Parker, 7 La. Ann. 83. It affords very little ground to either. We note that in that case it is said that on cross-examination much latitude is allowed for the good order and dispatch of public business.

The question could be asked for the purpose of proving the untrustworthiness of the witness. The authorities are overwhelming upon the subject. There must be a limit, however, to the exercise of the right. It might be abused, and, in the language of one of the decisions upon the subject, "become a slaughter house of reputations." That is not the case here.

The case of State v. Murphy, 45 La. Ann. 960, 13 South. 229, is only cited, and will not be commented upon, as it is not controlling.[1]

The position of the prosecuting officers was that the defense treated the question as one relating directly to the facts of the case, and that, as a consequence, it was properly excluded. In one section, in which the purpose was set forth, the defense stated that it was for the purpose of attacking the credibility of the witness. In another, it was to prove "time and place" which gave rise to the

[1]Note.—The writer was the organ of the court originally in the case cited, viz., State v. Ricks Murphy, 45 La. Ann. 960, 13 South. 229; but he was not the organ on rehearing. Mr. Justice Watkins was the organ of the court on the rehearing, as shown by the copy of the opinion of record and the entry on the minutes of May 31, 1893 (Minutes Book No. 27, p. 268). Credit if any be due, for the opinion on rehearing, should go to whom due. Well-kept records render the oversight manifest. The decision is not controlling though on rehearing it goes fully into a question somewhat similar.

inference, and it was for the purpose of impeaching the witness by other testimony. The first part of said statement was within the rule regulating a cross-examination, and to that extent the questions are proper. The testimony related to a collateral fact.

The second part of the statement, if based on the idea not directly expressed—that the defense would have the right to contradict the witness—was not admissible, as it did not relate to a fact of the case itself, but, as before stated, to a collateral fact.

The last did not have the effect of giving ground to exclude the question propounded to prove the first part of the purpose stated.

On the ground stated, the case will have to be remanded, as we think the question should have been allowed.

### Hearsay.

The defendant, through counsel, asked Bennett, a witness, why it was that the son of the deceased called at his shop. The objection was that the son referred to, Arthur McClendon, had not been called as a witness, was not a party defendant, and that anything he said when he met the witness could not be proven as proposed; that the testimony was hearsay.

The pistol was out of order, and was brought to the witness to be repaired. This could have been shown, without introducing inadmissible testimony.

### Special Instruction Requested.

Defendants objected to instructions given by the court at the instance of the prosecuting officers on the ground that they were not applicable to the case. The charge objected to was special. It was a syllabus of a decision by a court of another jurisdiction. It dwelt at some length upon the subject of self-defense. It was good law, if applicable, and not prejudicial, if not applicable.

### Charge Requested by Defendant Refused.

The court refused to grant certain charges requested by defendant. The court instructed the jury that as jurors they could only act on the evidence before them. That instruction had been covered by the general charge of the court. The court could not be made to repeat what it had already said in the general charge.

### Self-defense, the Right to Act on Appearance and the Apprehension of Great Bodily Harm, All of Which had been Covered in the General Charge.

The other charge requested was not applicable to the case, as we are informed by the court. The court has the right to decline to charge law not applicable to the case.

The bills of exceptions which we have heretofore considered embrace all the points. There is nothing left for us to decide on the motion for a new trial, and the same is true of the motion in arrest of judgment, in which it is stated that the indictment and verdict were not in due form.

The indictment was in due form, and the verdict finds both accused guilty.

For reasons stated, the judgment of the lower court is avoided, annulled, and reversed.

It is further ordered, adjudged, and decreed that the case be remanded to be tried in accordance with the law and the views herein expressed.