OVERTON, J.
 

 The grand jury for the parish of Livingston returned a bill of indict ment against defendant, charging him with the murder of Dr. James A. Cannon. Defendant was tried on the bill and was found guilty as charged. Upon this verdict He was sentenced to death. He prosecutes this appeal from the verdict rendered and from the sentence pronounced, relying upon a number of bills of exception for a reversal.
 

 Bill No. 1.
 

 On the trial of the ease, the state offered the procés verbal of the coroner’s inquest to show the death of the deceased, and the date and cause thereof. Defendant objected to this offering upon the ground that the prpeés verbal was admissible to show only the death of the deceased and the date thereof, but not the cause of the death. The court overruled this objection. The ruling was correct. The procés verbal was admissible to show the cause of death. State v. Parker, 7 La. Ann. 84; State v. Johnson, 10 La. Ann. 457; State v. Duffy, 39 La. Ann. 419, 2 So. 184; State v. Baptiste, 108 La. 234, 32 So. 371.
 

 Bills Nos. 2 and 3.
 

 These bills may be considered together. They relate to questions propounded to a witness for the state by defendant touching the number of times the witness had been arrested, and whether it was not a fact that the witness got into a squabble or broil at every, or nearly every, public dance that he attended. This evidence was objected to by the state, and while the objections were sustained by the court, yet it appears that the state later withdrew the objections, and defendant then cross-examined the witness at length relative to his past conduct. As the objections were withdrawn, these bills are wholly without merit.
 

 Bill No. 4.
 

 In this bill it appears that defendant propounded to a witness on cross-examination a series of questions, with the end in view of showing that deceased was armed with a pistol on the night before the homicide. Under an objection made by the state to the admissibility of this evience, the jury was withdrawn, in order to enable defendant to complete his bill by taking down the evidence objected to for the purpose of making it a part of the bill. After the jury had been withdrawn, the witness, in response to a question propounded to him, testified that deceased was not armed the night before the homicide and that he had never seen him armed. The state then withdrew its objection. It is manifest, therefore, that this bill is without merit ; in fact, the judge certifies that no bill of exception was reserved.
 

 
 *523
 
 Bills Nos. 5 and 6.
 

 While the coroner was on the stand, as a witness for the defense, he was asked on his examination in chief whether there were any bad results from the wound on defendant’s head and ear, and whether he treated defendant for the wound later. The state objected to the question, without stating the ground for doing so, and the court sustained the objection. The bill reserved to this ruling'constitutes bill No. 5. It appears from the next bill mentioned in the caption, bill No. 6, that, while the examination of the same witness was still being epnducted in chief, he was asked the following questions and gave the following answers, to wit:
 

 “Q. Did the bruises on Mr. Joiner’s (defendant’s) head and ear appear to be severe bruises or slight ones?
 

 “A. It appeared to be more of a glancing lick —not a severe blow. At the time I did not consider it a severe blow.
 

 “Q. Since that time, Doctor, what do you consider it?”
 

 . When the last question, quoted, was asked, the state objected to the question without stating the grounds of objection, and the court sustained the objection. It appears from these bills that the questions, set forth in them, were propounded to the witness “for the purpose of showing the assault and battery on the defendant by the deceased, and the force and violence of the blow on his head and ear, and for the further purpose of showing the effect the blow had on the defendant.”
 

 The reason why this evidence was ruled out appears from the following statment attached by the trial judge to the bill, to wit:
 

 “The coroner, the sheriff, and one other, witness to whom the alleged wound was shown testified that it1 was a mere scratch as from a glancing blow and it -was so slight as not to be noticed by any one until some hours after the arrest. The accused himself testified only to a slight breaking of the skin. As the evidence showed 'that accused shot deceased when deceaáed was facing from him and talking to two other men, and as aeeused,hiihself claimed self-defense by reason of an alleged putting of hand to hip pocket, and the alleged wound to accused was so slight, it was not relevant as to subsequent trouble he may have had with it by reason of infection or otherwise.”
 

 Wé gather from the record that the wound on defendant’s head and ear was inflicted by ■a blow delivered by the deceased a short time, probably a few moments, before the homicide. It is elementary that a blow is deemed a sufficient provocation to cause such a heat of passion as to reduce a felonious homicide from murder to manslaughter. We'think it was competent for defendant to show the severity of the blow with which he was struck, for such evidence would have a tendency to establish that defendant was thrown, in fact, into a sudden heat of passion as a result of the blow. The severity of the blow may be shown, not only by direct evidence, but also, by circumstantial evidence, and by the opinion of experts based upon the nature of the wound. It was therefore competent for defendant to show that he was treated by the coroner for the wound, and, if'he could, that while the coroner, at first, did not consider the wound one that was inflicted by a severe blow, still that later he difl. It is obvious from the verdict returned by the jury that they considered that the blow did not throw defendant into a sudden heat of passion. Had the evidence, sought to be elicited, as to-the severity of the blow, been admitted, the jury might have reached a different verdict. In our opinion the evidence should have been admitted. Its exclusion was fatal to the verdict. Defendant was seeking to show the severity of the blow, and not that the wound afterwards became infected.
 

 Bill No. 7.
 

 In this bill it appears that defendant propounded to one of his witnesses the following questions, and received the following answers, to wit:
 

 “Q. Did you know Dr. Cannon?
 

 “A. Yes, sir.
 

 
 *525
 
 “Q. When was the last time you saw him before- the night he' was shot?
 

 “A. Sunday morning; on the morning of the same day at my house.
 

 “Q. Did you see him with any .weapon at that time?”
 

 The last question, quoted above, was objected to by the state, and the' objection was sustained. The question was propounded, -as appears from the bill of exception, for the purpose of showing that defendant Was at the witness’ home on the morning of the day of the homicide, at which time he was armed with a pistol, and was flourishing it around in the presence of the accused. As defendant had testified, as appears from the per curiam to bills 5 and 6, that the deceased, at the time he was shot, threw his hand back to his -hip pocket, as if to draw a pistol, it is obvious that the purpose' of the foregoing evidence was to show that deceased was armed, or that defendant had reason to believe that he was armed, at the time he shot the de-' ceased. However, the trial judge, in his statement attached to the bill, says, substantially, that all the witnesses, both for the state and the.defense, except defendant himself, testified that the deceased was facing two men, talking to -them, apparently unaware that he was about to be attacked when defendant shot him. The judge also says that, at the time the deceased was shot, there was nothing to lead defendant to believe that his life was in danger. Hence the judge concluded that the evidence, sought to be elicited, was inadmissible. We think that the ruling of the trial court was correct. In the absence of proof of a hostile demonstration, by the deceased at the time of the killing, it was immaterial whether deceased had a pistol in his pocket when he was killed, or whether defendant had reason to believe that the deceased was armed. It was within the province of the court to determine whether a hostile demonstration had been made before admitting the evidence. See in this connection State v. Benoit, 144 La. 276, 80 So. 329; State v. Sandiford, 149 Da. 933, 90 So. 267; State v. Poole, 156 La. 437, 100 So. 613; and State v. Harvey, 159 La. 674, 106 So. 28. Here the evidence shows, as found by the trial judge, that no hostile demonstration was made by deceased at the time he was killed, and that, at that moment, instead of making a hostile demonstration, the deceased was not even facing defendant, but was facing, two other men, talking to them. We see no reason to disturb the finding and ruling of the couit. The evidence, ruled out, was irrelevant and inadmissible.
 

 Bill No. 8.
 

 While defendant was on the stand, and under cross-examination, he was asked .the following question:
 

 “What did you mean a while ago when you told the jury that you told Charley Murray that that was the second time he (Murray) was messing in your affairs?”
 

 Defendant, without stating the ground of objection, objected to the question. The court overruled the objection, and defendant answered the question as follows:
 

 “Well, some parties were hunting without a license, and I was in the party, and I felt that he (Murray) reported it to the game warden.”
 

 Complaint is made in the bill of exceptions that defendant was thus compelled, in contravention of the Constitution, to give evidence against himself of having violated the game law. Defendant, however, interposed no such objection before answering the question. The question, propounded, was permissible on cross-examination, in the absence of a specific objection timely made to it.
 

 Bills Nos. 9 and 10.
 

 These bills were taken to the refusal of the judge to clear the courtroom, during the argument, to avoid a répetltioh of applause by the .audience. In view of the fact that we find it necessary to reniand this case,
 
 *527
 
 and since these bills relate to matters not likely to arise on the second trial, it is unnecessary that we discuss them. We may say, however, that we find no merit in them.
 

 Bill No. 11.
 

 Immediately before the homicide, it appears that there was a difficulty between defendant and Charles Murray. It also appears that the deceased intervened in the difficulty to protect Murray. This difficulty,, it seems, was caused by the refusal of defendant to deliver to Murray an automobile, which, it is said, Rudolph Smith had placed in charge of defendant, unless Smith should authorize the delivery. The bill recites that, while Smith was on the stand, as a witness for the state, he testified on his examination in chief that he did not leave his car in charge of defendant. The defendant desired to rebut this statement made by Smith on his examination in chief, and offered the witness Hughes for that purpose, propounding to him the following question, to wit:
 

 “Did you hear any conversation between Rudolph Smith and Oscar Joiner (the defendant) about Rudolph Smith’s car on the night before the homicide?”
 

 The state objected to the question on the ground that the evidence, if elicited, would be hearsay and irrelevant. The court sustained the objection. The judge says, in his per curiam attached to the bill, that his recollection is that the objection was withdrawn, and that the question was answered, and, moreover, that he does not recall that a bill was taken. However, the note of evidence, found in the record, discloses that the bill was taken, and the record does not disclose that the objection was withdrawn and the question answered. As the judge does not'certify positively that the objection was withdrawn and the question answered, we are of the opinion that we should consider the bill, especially as our brother was in error as to its reservation. We consider that, in signing the per curiam attached to the bill, he, in fact, signed the bill. With reference to the subject-matter of the bill, we think it would have been better practice not to have gone into the details of the difficulty between defendant and Murray. However, the state having offered evidence to show that Smith had not left his automobile in defendant’s charge, defendant should have been accorded the right to show that he had. The evidence, sought to be elicited for that purpose, was not objectionable as hearsay.
 

 Bill No. 12.
 

 This bill was taken to the refusal of the judge to deliver to the jury four special charges. One of these charges was as follows:
 

 “The right of self-defense does not depend exclusively upon the reality or imminency of the danger apprehended, and where a man has been assaulted and a blow dealt him, though he be mistaken as to his actual danger, he will not be responsible for his action, if he act upon honest convictions of danger induced by reasonable evidence, though really not in such danger. The overt act need not amount to a felonious assault; the test being, not what the person assaulting intended, but what the act he did caused defendant to believe was his intention. The law does not require of the defendant the same coolness and judgment, in estimating his danger, that can be exercised by the jury in reviewing the circumstances of the encounter.”
 

 The judge refused to give this charge on the ground that it was fully covered by the general charge. In thinking that the special charge was so covered, our brother is in error, as appears from his general charge on self-defense, which we quote:
 

 “The right of self-defense, that is, the right of a man who is unlawfully attacked, to stand and defend himself, is a God-given right and is recognized by the law of this state. To maintain a plea of self-defense, there must be an actual physical attack or a hostile demonstration of such a nature as to afford reasonable grounds to believe that the design is to destroy life or inflict great, bodily harm upon him; there must be such an appearance of impending danger as
 
 *529
 
 to make the killing of the assailant seem the only way of avoiding immediate death or great bodily harm.
 

 “The mere belief.of the accused is not sufficient, for there must be a reasonable cause for apprehension and belief. Even when assaulted, it is not sufficient that the accused be under apprehension of danger; he must at the time have reasonable grounds to fear from the manner in which he was assaulted that he is in danger of losing his life or of receiving great bodily harm.
 

 “A plea of self-defense admits the killing, but does not admit the killing is unlawful; and, when such a plea is made, it is still incumbent on the state to prove the guilt of the accused beyond a reasonable doubt; and, should there be a reasonable doubt in your minds as to whether he was or- was not acting in self-defense, he is entitled to the benefit of such doubt.”
 

 While the general charge contains expressions relative to the right of one, against whom an overt act or hostile demonstration is made, to act, in defending himself, upon the appearance' of impending danger, yet it does not bring to the attention of the jury, or at least clearly so, that the person so acting will not be responsible for his actions, if he acted,upon honest convictions, induced;by reasonable evidence, that his life was in danger, or that he was in danger of receiving great bodily harm, though it afterwards appear that he was mistaken as to his actual danger; nor does the general charge include the doctrine that the overt act need not have amounted to a felony; nor does it inform the jury that the law does not require of the defendant the same coolness of judgment, in estimating his danger, that the jury is in position to exercise in reviewing the circumstances of the encounter. Defendant was entitled to instructions along these lines. State v. Guidor, 113 La. 727, 37 So. 622; State v. Robinson, 143 La. 543, 78 So. 933; State v. Garic, 35 La. Ann. 970. There was evidence in the record calling for such instructions.
 

 However, the special charge requested, standing alone, is not free from criticism. It does not convey to the jury that the honest conviction of danger upon which the person acts; against whom the hostile demonstration, is made, must be the danger of losing his life, if he does not act, or of receiving great bodily harm. The case, being; a homicide case, the special charge, strictly speaking, should have contained words showing that the danger apprehended must be danger to life or of receiving great bodily harm. However, the special charge requested, was intended to be only supplementary to the general charge, and, when taken in connection with it, which it necessarily has to be, the defect, mentioned, which is only an omission, is cured. In our opinion the special charge should have been given.
 

 With reference to the remaining special charges, refused, we are of the opinion that the judge did not err in refusing charge No. 3, relative to manslaughter, because it is not a correct statement of the law, and, moreover, the judge instructed the jury fully, as to manslaughter, in his general charge and in a special one requested. The remaining special charges, requested, and shown in this bill, were refused, because they were covered by the general charge. They were substantially included in it, and hence there was no error in refusing them.
 

 Bill No. 13.
 

 This bill was taken to the overruling of an original and a supplemental motion for a new trial. In view of the conclusion we have reached, it is unnecessary for us to consider it.
 

 Bill No. 14.
 

 We find no merit in this bill.
 

 For the reasons assigned, the verdict and the sentence appealed from are annulled and set aside, and this case is remanded to the lower court to be proceeded with according to law.
 

 O’NIELL, C. J., concurs in the decree, but not in the ruling on bill Nb. 7, and hands down reasons.
 

 
 *531
 
 BRUNOT, J., dissents, from the ruling on bill 5 and 6, but, as the ruling on bill 12 necessitates a reversal of the verdict, concurs in the decree.