(112 So. 503)

No. 28432.

## STATE v. JOINER.

March 28, 1927.

*(Syllabus by Editorial Staff.)*

**1. Jury ⊜⇒103(1)—Juror is not disqualified because of impressions not preventing fair consideration of testimony, but is disqualified by strong impressions closing his mind against testimony.**

It is no objection to qualifications of juror that he has acquired light impressions of issues, which are such as to yield to testimony and leave his mind open to fair consideration of that testimony, but strong and deep impressions, which close his mind against testimony offered in opposition to them, do disqualify him.

**2. Jury ⊜⇒97(2)—Personal friend of deceased and of state's main witness held disqualified as juror in murder prosecution, notwithstanding his statement on voir dire that he could render impartial verdict.**

In murder prosecution, juror, who was a personal friend of state's main witness and of deceased, who met his death in attempt to prevent such witness from being maltreated by defendant, and had been told purported facts of case by such witness, *held* disqualified as juror, and it was reversible error to permit him to sit as juror over challenge for cause, notwithstanding his statements on voir dire that he could render an impartial verdict solely on evidence presented.

**3. Jury ⊜⇒133—Court is not bound by answers of juror on voir dire inconsistent with facts disclosed by examination.**

Court is not bound by the answers of a juror on his voir dire, when they are opposed

163 LA.—20

to and inconsistent with the facts and circumstances disclosed by his examination.

**4. Courts ⊜⇒74—Defendant's motion to have jury visit home of witness incapable of attending court held properly overruled.**

In murder prosecution, defendant's motion to have jury visit home of witness incapable of attending court because of paralysis *held* properly overruled, because of danger of separation of jury and interference by, or conversations with, third persons.

**5. Criminal law ⊜⇒927(5)—Separation of jury before rendition of verdict in open court in capital case creates presumption against integrity of verdict, and is ground for new trial.**

In capital case a separation of the jury, with or without accused's consent, after being sworn and before rendition of the verdict in open court, always creates a presumption against the integrity of the verdict, and will be a ground for a new trial, though this presumption may be overcome by showing that accused was not prejudiced by separation of jury.

**6. Homicide ⊜⇒188(3)—Exclusion of testimony that deceased was quarrelsome and dangerous held not error, where deceased was doing no hostile act at time of killing.**

In murder prosecution, exclusion of testimony offered for defendant, tending to show quarrelsome and dangerous character of deceased, *held* not error, in absence of evidence showing that deceased was doing any act at time of killing which could have been interpreted by accused as a hostile demonstration of any kind.

**7. Homicide ⊜⇒340(3)—Accused could not complain of instruction that murder can only result from express malice; instruction being favorable.**

Accused could not complain of instruction that murder can only result from express and not implied malice, since instruction is favorable to accused.

**8. Criminal law ⊜⇒1159(2)—Jury's finding as to accused's guilt or innocence of murder held not reviewable by Supreme Court.**

Jury's finding on facts concerning the guilt or innocence of accused in murder prosecution *held* not reviewable by Supreme Court.

Brunot, J., dissenting. O'Niell, C. J., dissenting in part.

Appeal from Twenty-First Judicial District Court, Parish of Livingston; Columbus Reid, Judge.

Oscar Joiner was convicted of murder, and he appeals. Verdict and sentence annulled, and case remanded for new trial.

M. C. Rownd, of Springfield, Ellis & Ellis and Matthew J. Allen, all of Amite (Chandler C. Luzenberg, of New Orleans, of counsel), for appellant.

Percy Saint, Atty. Gen., A. L. Ponder, Jr., Dist. Atty., of Amite (Amos L. Ponder, Sr., of Amite, and E. R. Schowalter, Asst. Atty. Gen.), for the State.

ROGERS, J. The defendant was convicted of murder and sentenced to death. On appeal, the conviction and sentence were set aside and the case remanded for further proceedings. See State v. Joiner, 161 La. 518, 109 So. 51. On his second trial, defendant was again found guilty as charged and sentenced to suffer the extreme penalty. The present appeal is from this conviction and sentence. The errors assigned are set forth in thirteen bills of exception which have come up with the record.

Bills Nos. 1, 2, 3, 4, and 5 were reserved during the examination of the jurors on their voir dire. No. 1 was taken to the ruling of the court in sustaining an objection of the district attorney to certain questions propounded to one of the veniremen, and the other bills were reserved because the trial judge refused to sustain a challenge for cause presented in each case. None of the bills, with the exception of bill No. 5, possess any merit.

Bill No. 5, however, presents a serious question of law. An examination of the bill shows that it was taken to the action of the court in permitting one Russell Robertson to qualify and sit as a juror in the case, notwithstanding he had been challenged for cause by the defendant, after he had ex-hausted all his peremptory challenges. The bill recites, substantially, that the juror in question testified he was a personal friend of the deceased and of Charlie Murray, the main witness for the state; that Murray had told him what purported to be the facts of the case, and that he had formed an opinion which it would require evidence to remove, for all of which reasons he was incompetent to serve on the jury. It appears that the killing grew out of a difficulty between the defendant and Charlie Murray, in which the deceased intervened on behalf of Murray.

In support of his ruling that the juror was competent, the trial judge stated that he saw no reason, either from his knowledge of the juror's character and standing nor in his answers on his voir dire, to justify excusing him.

On his examination, the juror readily admitted that he was not only an intimate friend of the witness Murray, but also of the deceased. When first interrogated on the subject, he denied that he had talked to Murray about the case, but later, in response to further questioning, he acknowledged that this witness told him the facts of the case, from which he had formed an opinion that would require evidence to change. In reply to questions propounded by the district attorney and by the court, the juror declared that the fact he had talked to the principal witness for the prosecution would not influence him in weighing the testimony, and that he would not believe a witness who was his personal friend more readily than he would believe a stranger whose testimony might be in conflict with that of his friend, that he could disregard his friendship for the witness and for the deceased, and that he could give the defendant the same fair and impartial trial that he could give in a case where he was not a friend of the prosecuting witness and of the deceased.

[1] The standard observed in Lord Mans-

field's day and time, that a juror should be "white as paper," is impractical under modern conditions, and is no longer accepted as correct. The rule now generally observed, although the courts of several of the states have gone much further, is the one announced by Chief Justice Marshall on the trial of Aaron Burr. He said (as quoted and approved in State v. George, 8 Rob. at page 538):

" 'Were it possible to obtain a jury, without any prepossessions whatever respecting the guilt or innocence of the accused, it would be extremely desirable to obtain such a jury; but this is perhaps impossible, and therefore will not be required. The opinion which has been avowed by the court, is that light impressions which may be fairly supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him. Those who try the impartiality of a juror, ought to test him by this rule.' Burr's Trial, p. 416."

The rule as thus adopted in the cited case, has been adhered to in this state. See State v. Brown, 4 La. Ann. 505; State v. Bunger, 11 La. Ann. 607; State v. Ricks, 32 La. Ann. 1098; State v. Williams, 49 La. Ann. 1148, 22 So. 759, referred to infra.

In applying the rule to a criminal prosecution, the question of whether a juror in such a proceeding is disqualified by reason of a preconceived opinion is always one of degree, and the court must determine, from all the circumstances of the case and the mental characteristics of the juror, as disclosed on his voir dire, whether his state of mind is such and the opinion he entertains is such as will prevent him from rendering full and impartial justice in the case.

In this proceeding, it is not shown, conclusively, whether the juror entertained a strong opinion or merely a weak impression. It can be contended, with some degree of reason on the face of the record, that, inferentially, the juror had only a transient impression concerning the merits of the case, since he testified, under the questioning of the district attorney and the district judge, that he could disregard all personal views and all feelings of friendship and give the defendant a fair and impartial trial.

These declarations of the juror, however, must be tested, like all other human testimony, according to the common knowledge, experience, and observation of mankind.

It is the natural impulse of all men, with rare exceptions, when the direct question is put to them, especially by one in authority, such as a district attorney or a trial judge, to declare that they believe they can disregard a preconceived opinion and render a fair and impartial verdict upon the evidence submitted to them. In general, they are sincere in their statement and belief. The declaration, however, should not only proceed from the mouth of the venireman, but it should be made in connection with a state of facts showing that it is probably true.

[2] While it has been decided that the character of the opinion rather than its source determines the question of a juror's qualification, vel non (16 R. C. L. § 83, p. 266), nevertheless, we do not think it can be denied that the source from which it is obtained has an important, if not a controlling, influence upon the nature of the opinion itself. It is not difficult to perceive a wide difference between the strength of an opinion derived from a statement of the facts made by an intimate friend interested in the prosecution and of an impression resulting merely from newspaper accounts or general rumors. In the case before us, the juror in question received the facts at first hand from his intimate personal friend, who was a victim of defendant's aggression, concerning the alleged

murder by the defendant of another intimate personal friend. It does not require a very strong flight of the imagination to understand that the facts constituting the case against the defendant lost nothing in the way of vividness or effectiveness in their narration by the witness to the juror. And it is not difficult to realize what was the opinion of the juror formed from said facts, and the strength and enduring character thereof. We do not believe any sane man would be willing to be tried for any alleged infraction of the law by a juror in the frame of mind in which the juror in question was after he received the facts of the case from the principal witness for the state. Nor do we believe that the juror, without questioning the sincerity of his statement on his voir dire, was in a position to weigh the evidence of his friend against the evidence of strangers and of the defendant, accused of murdering his intimate friend, so as to strike a balance between them such as the law requires.

The belief which the juror expressed, upon his examination by the district attorney and the court, that he could render an impartial verdict solely upon the evidence does not alter the situation. One may believe an untruth of himself as well as of another. A person governed by prejudice is usually unaware of its existence. It is not humanly possible for one to have received the facts of the case in advance of the trial as they were received by this juror, and then to have so completely divested his mind of those facts in the jury box that he was able to try the case de novo as impartially as if he had not obtained prior knowledge thereof.

[3] The court is not bound by the answers of the juror on his voir dire when they are opposed to and inconsistent with the facts and circumstances disclosed by his examination. State v. Barnes, 34 La. Ann. 395.

A careful examination which we have made of our own jurisprudence reveals the following cases, which we deem it necessary to refer to in connection with the question under discussion, viz.:

State v. Ward, 14 La. Ann. 673. In this case, the court overruled a challenge for cause directed to a juror who had conversed with two of the witnesses, not knowing them to be such, but had formed no deliberate opinion from the conversations of the guilt of the accused. Obviously, the decision is valueless as authority in the present inquiry.

State v. Guidry, 28 La. Ann. 630. Here the court held to be a good juror one who had conversed with some of the eyewitnesses to the killing and had formed an opinion which was merely imaginary and not fixed and would yield to the evidence.

In State v. Dugay, 35 La. Ann. 327 and State v. Mayfield, 104 La. 180, 28 So. 997 (one justice dissenting), the court ruled that a juror was competent who had formed an opinion based on statements made by witnesses, but which opinion was not fixed and could be removed by the evidence, and where he was free from prejudice or bias against the accused.

Without questioning at the present time the correctness of these three decisions, it suffices to say that they are not appropriate to the case in hand, since the facts upon which the jurors were ruled to be competent there are not the same as the facts upon which the juror was ruled to be competent here.

State v. Addison, 134 La. 651, 64 So. 497, discloses a situation in which the challenged juror was a close friend of the prosecuting witness, who had related to him what happened between him, the witness, and the defendant. While the court held the juror to be competent, it evidently was not entirely satisfied with the correctness of its ruling, for it finally said, in its opinion, that, although

the defendant eventually exhausted his peremptory challenges, it found no intimation anywhere that he needed any, after they were exhausted; "hence there is no disclosure of injury resulting from the ruling, * * * even if that ruling were found to have been erroneous, and we are not prepared to say that such error would call for the setting aside of the conviction."

The cases are similar in that the juror in each, a close friend of the prosecuting witness, was in possession, prior to the trial, of his friend's version of the affair. But the similarity goes no further. In the case before us, the juror was an intimate friend, not only of the witness, but he was also an intimate friend of the deceased, who met his death as a result of his efforts to prevent the witness from being maltreated by the defendant. We do not think one so circumstanced could stand indifferent between the state and the accused.

In State v. Caron, 118 La. 349, 42 So. 960, this court approved the action of the district judge in excluding as a juror, on a challenge for cause by the district attorney, a friend of the accused, who had conversed with persons knowing something of the particulars of the case.

State v. Jackson, 37 La. Ann. 768, presented an issue strikingly similar to, and we think controlling of, the one involved here. The juror there, on his voir dire, stated that he had heard all the facts and circumstances respecting the killing, just after it was done, and had formed and expressed an opinion that was against the accused, and that the deceased was a close personal friend of his, but that, notwithstanding all this, he could give the accused a fair trial. He was unsuccessfully challenged for cause by the defense and sat on the case; all the peremptory challenges of the defendant having been previously exhausted.

This court held the ruling was wrong, and that the accused was seriously prejudiced thereby. The court expressed itself in these words, viz.:

"We can scarcely conceive it possible that a man should have no bias against one whom he firmly believed had wantonly killed his close friend, or that he could be perfectly fair and impartial as a juror sitting on his trial for the killing. If the law permitted one thus circumstanced to pass upon and determine the guilt or innocence of an accused, we might well believe that the constitutional guarantee of a fair and impartial trial for all charged with crime, was the veriest mockery.

"This court has frequently held that one was not incompetent as a juror, because he may have formed and expressed an opinion of the guilt or innocence of the prisoner; provided, there was an assurance that such opinion would yield to evidence and was unaccompanied by prejudice, but it has never gone so far as to declare him competent when that opinion, formed in a case of homicide, for instance, was coupled with a close friendship for the deceased, or other like conditions calculated to wield a potent influence over the mind and judgment."

Counsel for the state cite State v. Rini, 153 La. 77, 95 So. 400, and State v. Williams, 49 La. Ann. 1148, 22 So. 759, in support of the ruling of the court below. We do not think either case applicable. State v. Williams, inferentially, is against the ruling. There the court held a juror to be competent who had formed an opinion from a conversation with his brother, a member of the jury who had previously tried and convicted the accused on the same indictment. But the court very carefully pointed out in its opinion that the record disclosed the juror never discussed the facts with the witnesses, nor heard any one of them give a version of the case, thus indicating clearly that, if such had been the case, its ruling would have been otherwise.

Our conclusion is that the bill shows reversible error.

Bill No. 6. This bill is frivolous.

[4] Bill No. 7. The bill was taken to the action of the court in overruling, upon ob-

jection by the state, of defendant's motion to have the jury visit the home of Mrs. Emma Hughes, who was unable to attend court because of disability. She was afflicted with paralysis.

The statement per curiam attached to the bill is as follows:

"Defendant announced ready for trial on Wednesday, and later asked for an instanter summons for this witness. It will be noted that the homicide occurred near her home; that she, accused, and accused's wife were on close terms of friendship, and that this witness was not used before the coroner nor at the first trial. If she had any information it must have been brought to the knowledge of the accused long before; two of this witness' sons were witnesses for the accused. The court had no facilities for taking the jury to her home, which was nine or ten miles distant. Two other witnesses testified to the same facts set up in the motion; the court had granted an order for additional witnesses, and, had due diligence been shown, a summons would have issued for this witness, and a ruling obtained before announcing ready for trial as to whether the state would admit that, if the witness was present, she would swear to the facts set up in a motion or grant a continuance."

It is questionable whether defendant exercised the due diligence in the summoning of the witness that would entitle him to secure her attendance or to obtain her testimony by compulsory process. State v. Turner, 129 La. 702, 56 So. 644. But the objection to the procedure invoked by defendant in order to procure the testimony goes further than this. If the trial of a criminal case could be temporarily transferred to the residence of a witness, residing nine or ten miles from the courthouse, it could be transferred to the residence of other witnesses, residing at even greater distances away from the parish seat, and the court would frequently become a peripatetic forum. Such a custom would be not only impracticable and undesirable because of inconvenience and expense, but it would always endanger the legality of the verdict. In all of such visits, even though the jurors would be in charge of the duly constituted law officers the danger of their separation would be immeasurably increased, and it would be difficult, if not impossible, to exclude interference by or conversations with third persons.

[5] In capital cases a separation of the jury, with or without the consent of the accused, after being sworn and before rendition of the verdict in open court, always creates a presumption against the integrity of the verdict, and will be a ground for a new trial. State v. Craighead, 114 La. 84, 38 So. 28; State v. Moss, 47 La. Ann. 1514, 18 So. 507; State v. Foster, 45 La. Ann. 1176, 14 So. 180; State v. Warren, 43 La. Ann. 828, 9 So. 559; State v. Frank, 23 La. Ann. 213; State v. Hornsby, 8 Rob. 554, 41 Am. Dec. 305. It is true that this presumption may be overcome by showing that the accused was not prejudiced by the separation of the jury. But this qualification merely reduces and does not remove the danger of separation and of interference by outsiders in carrying the jury about the parish from place to place during a criminal trial.

[6] Bill No. 8. This bill was reserved to the action of the trial judge in sustaining an objection of the district attorney to the introduction of any testimony tending to show the quarrelsome disposition and dangerous character of the deceased. The testimony was excluded because, in the opinion of the judge, no evidence was adduced showing an overt act or hostile demonstration. A similar bill was reserved and overruled on the former trial. The transcript contains a vast amount of testimony in which there is some conflict between the witnesses for the prosecution and for the defense, but the preponderance of the evidence appears to bear out the statement of the trial judge "that the deceased was doing no act which could have been interpreted by the accused

as a hostile demonstration of any kind." We find no error in the ruling.

Bills Nos. 9 and 10 were taken to the overruling of objections by the defense to certain questions propounded to Mrs. James A. Cannon and Ike Starns, witnesses for the state. There is no merit in either of the bills.

[7] Bill No. 11. This bill was reserved to the refusal of the trial judge to give the jury special charge No. 4, containing defendant's conception of the definition of the crime of murder; to the charge of the judge with reference to the duration of malice which must exist in the mind of an accused at the time of the killing; and to the court's explanation, in the charge, of the difference between murder and manslaughter.

In this court, in argument and in brief, defendant has abandoned his attack on the rulings complained of, and has apparently accepted the charge as being correct. His complaint urged here is "that the verdict of the jury is not only not responsive to the charge of the trial judge, but directly contrary to his instructions, and therefore illegal."

The argument on the point is highly technical and ingenious. Its purpose is to demonstrate, from an analysis of the pertinent statutes, that the intention of the lawmaker is to punish by death only willful, deliberate, and premeditated murder, and that murder, where the malice is only implied and not expressed, should be graded as manslaughter.

In his charge, the trial judge stated that "malice aforethought comprehends a deliberate and premeditated ill will." Defendant, seizing upon the statement, contends that, since there was no evidence to show murder with express malice, with a "deliberate and premeditated ill will," the jury, under the definition given, should have acquitted him.

[8] If the judge instructed the jury that murder could only result from express, and not from implied, malice, the instruction was in the interest of the defendant, and we fail to find any justification for his complaint. The verdict of guilty as charged, construed with reference to the judge's definition of malice, indicates, clearly, that the jurors were of the opinion that the evidence showed defendant was actuated by a deliberate and premeditated ill will and guilty of express malice toward the deceased. Their finding on the facts concerning the guilt or innocence of the accused is not reviewable by this court. The trial judge thought the verdict was in accordance with the instructions set forth in his charge and was correct, for he refused defendant's application for a new trial, and imposed the sentence required by law.

Bill No. 12 was reserved to the overruling of a motion for a new trial based upon some twenty-one different and distinct allegations of error; and bill No. 13 was taken to the action of the court in excluding the testimony of certain witnesses produced by the defendant on the hearing of the motion. In view of the conclusion we have reached, it is not necessary for us to consider these bills.

For the reasons assigned in our ruling on bill No. 5, the verdict and sentence appealed from are annulled, and the case is remanded to the court below for a new trial.

BRUNOT, J., dissents.

O'NIELL, C. J. (concurring). I concur in the decree rendered in this case, but not in the ruling on bill No. 7. My opinion is that the judge should have allowed the jury to be taken to the bedside of the sick witness.

For the reasons given in my dissenting opinion in State v. Harvey, 159 La. 674, 106 So. 28, I dissent from the ruling on bill No. 8 in this case.

The argument of the learned counsel for appellant, referred to in the discussion of bill

No. 11, impresses me as being fundamentally correct; but the question whether, according to the evidence in the case, the verdict should have been a conviction of manslaughter instead of murder is not presented as a question of law. Therefore we have no jurisdiction over the question.