MONROE, J.
The defendant in this case was convicted of rape and sentenced to death, and, having appealed, presents his case to this court by means of certain bills of exception, which will be considered in inverse order with respect to the numbers given them in the transcript.
Bill 8 show's that the defendant, having taken the stand as a witness in his own behalf, was asked on cross-examination, “Have you ever been convicted and sent to the penitentiary from this parish?” to w'hich his counsel objected “on the ground that it was not competent for the state to attack the character of the accused until he had attempted to prove it good.” The district attorney and the trial judge, whose statements are incorporated in the bill, say that the purpose of the question was to elicit testimony affecting the credibility of the witness, and not ■ the character of the accused, and the judge further says that the jury were so instructed. The objection was properly overruled. It is admissible to ask a witness w'hether he has not been in the penitentiary. Real v. People, 42 N. Y. 270; Wharton, Cr. Ev. §§ 474, 488. There might be some doubt as to the right to prove conviction by oral 'evidence over an objection that the record should be produced, but that objection was not made, and Judge Cooley, speaking for the court in Clemens v. Conrad, 19 Mich. 170, expressed the opinion, for which he gives good reasons, that, where the accused himself is on the stand, it should not be sustained.
Bills 6 and 7 show that the accused had testified that he had been suffering from a specific venereal disease for three weeks before the date of the alleged rape, and that the coroner, having examined him and the prosecuting witness, by order of the court, for the purpose of ascertaining whether they were both suffering from the same complaint, was interrogated, and testified as to the result, to which the counsel for the ac *685 cused. objected on the ground that the matter was privileged, and that, as to the accused, the admission of the evidence would be in effect to compel him to testify against himself.
No privilege was claimed by the witness or the prosecutrix, and, as it appears that the accused himself had testified that he had been suffering with the disease with which the coroner found him suffering, it is evident that he could have sustained no injury from the examination, which confirmed his own testimony. We think, under these circumstances, that the objections were properly overruled.
Bill 2 shows that the prosecutrix, being on the stand as a witness, and having testified that the sheriff of the parish visited her house on the day following that upon which the crime is alleged to have been committed, for the purpose of investigating the same, was asked, “Did you make a complaint to ,T. A. Broussard, sheriff of the parish, and, if so, when did you make that complaint?” to which it was objected that it was “not permissible for the state to prove a complaint or statement on the part of the prosecutrix made 24 hours after the alleged commission of the crime.”
Bill 4 shows that the sheriff, having testified that he had visited the house of the prosecutrix on the day following that upon which the crime is said to have been committed, for the purpose of making an investigation, and that he , then saw the prosecutrix for the first time after the alleged commission of the crime, was asked, “Did Mary Alice Spell make a complaint to you of what had happened to her?” to which the same objection was urged as to question propounded to the prosecutrix. The judge a quo states that in neither case was the witness permitted to give the details of the complaint, and, though there appears to be some difference between him and the counsel upon the subject, we must accept his statement. The failure, when unaccounted for, of the victim of a rape to complain of the outrage, throws suspicion on the case of the prosecution (Whart. Cr. Law [19th Ed.] § 566), and it is well settled that the fact that such complaint was made may be proved on the trial of the party charged with the crime (Whart. Cr. Ev. [9th Ed.] § 273). Nor is it necessary to the admissibility of such evidence that the making of the complaint should have been part of the res gestse. Delay, when accounted for, does not exclude such testimony. Whart. Cr. Law (9th Ed.) § 566. The objections stated in these bills were therefore properly overruled.
Bill 3 reads as follows: “Be it remembered that * * * after the prosecuting witness * * * had given her testimony, and had fixed the time of the alleged rape at between 2 and 3 o’clock of the morning of November 12, 1902, and [had testified] that she recognized the accused as the perpetrator at the time, and further testified that between 7 and 8 o’clock of the same morning she complained of the outrage * * * to one Solomon Morgan, and recited in her testimony the details of the complaint alleged to> have been made to Morgan, and after * * * Morgan had testified, as a state witness, and on cross-examination had given an account of the alleged complaint made by the prosecutrix to him, which varied essentially from that given by the prosecutrix in her testimony, in that Morgan testified that in her complaint to him the prosecutrix expressed herself as being uncertain of the identity of the perpetrator, and said that she saw two men running away from her house after the rape was committed, whereas the prosecutrix testified that she told Morgan that the accused had ravished her, and made no mention whatever of two men being implicated in the alleged crime, Joseph Spell, a brother of the prosecutrix, was sworn as-a state witness, and, after testifying on direct examination that the prosecutrix had! made a complaint to him at about 1 p. m. of the day of the alleged crime, the following question was propounded to him, on cross-examination: ‘Q. Did Miss Spell, in her complaint to you, state how many persons were at her house the night previous, at the' time she alleges she was ravished?’ whereupon the district attorney objected, on the ground that the witness, Mary Alice Spell, was not put on her guard as to the time and place to be contradicted by the witness now testifying.
“Counsel for the defendant submitted that the object of the question was to prove the fact directly involved in the issue of this case, namely, whether one individual or two *687 individuals participated in it, and tlieir identity; that the testimony was admissible without the necessity of placing the prosecutrix on her guard, as the testimony applied to- the central fact in issue.
“(2) That the prosecutrix was sufficiently placed on her guard, if such a proceeding was necessary, by calling her attention to the fact that the defense proposed to contradict the terms of the complaint, as given in her testimonié in so far as the identity of the perpetrator of the crime was concerned; she being told, at the time, that the terms of her different complaints, as given in her testimony, varied with the statements actually made in such complaints, and she was placed on her guard as to the contradiction.
“The court maintained the objection of the district attorney, and refused to permit the state’s witness to answer the question, or to permit him to testify on cross-examination as to any details of the complaint alleged to have been made to him by the prosecutrix.
“By the District Attorney: The witness, Joseph Spell, when called as a witness on behalf of the state, the only question propounded to him by the district attorney was whether or not Miss Mary Alice Spell made a complaint to him, or not, and the answer of said witness was ‘Yes.’ The question asked the said witness, Joseph Spell, ‘Did Mrs. Foreman, in her complaint to you, state how mans'- persons were at her house the night previous, at the time she was ravished?’ was properly objected to, because it intended to contradict the said Miss Mary Alice Spell. Said question was not proper for the reason that she had never been put on her guard as. to the time and place and by whom she would be contradicted, when testifying in chief, and that the said question was properly ’overruled by the court.
“By the Court: The court did not refuse to permit Joseph Spell to testify, on cross-examination, as to any details of the complaint alleged to have been made to him by the prosecutrix. The witness on cross-examination did testify as to the details of the complaint made to him by the prosecutrix. The court states that there was no contradiction between the statements made by the prosecutrix under oath and the statements of the complaint testified to by Solomon Morgan or Joseph Spell and other witnesses, and especially Cornelius Spell, a witness for defendant. The court refused to permit the question propounded to be answered because its purpose was to contradict the prosecutrix as to certain statements the counsel claimed she had made at different times; that the prosecutrix was not put on her guard as to that question, or given an opportunity to deny, admit, or explain any statements in that connection, if made or not made. Thereupon counsel for defendant excepted,” etc.
Bill 5 shows that Enoch Morgan, one of the parties to whom prosecutrix had complained, being on the stand as a state witness, and having testified that he lived at a distance of about three arpents from the prosecutrix; that he heard her cries for help, and ran to her assistance at the time of the alleged rape; and that he did not see the accused or any other man on the premises, or running away, was asked, on cross-examination: “Mr. Morgan, you say that you went running to Mrs. Foreman’s [Mary Alice Spell’s] house upon hearing her cries of distress. Now, I ask you exactly what she said at the time you reached her?” which question was objected to by the state, on the grounds: (I) That no proper foundation had been laid, when Mrs. Foreman was testifying in chief, as to the time and place and by whom she would be contradicted. (2) Under the rules of evidence, the only thing admissible is that a complaint has been made, and the answer thereto can only be in the affirmative or negative, and the details of what was said in a complaint to a third person cannot be detailed by him, for the reason that such testimony, if admitted, would be hearsay.
“The court maintained the objection, and refused to permit the witness to testify on cross-examination as to the nature of the statement made to him by the prosecutrix.”
The district attorney, in his statement incorporated in the bill, says that the only question propounded to the witness in the examination in chief was: “Did you hear cries, and were they, or not, cries of distress, and did you go to the house of Miss Mary Alice Spell, and did she, or not, make any complaint to you?” and that the answer *689 of the witness was in the affirmative, and this is substantially the statement of the judge.
It appears from the bills, and from the notes of evidence brought up with them, that the prosecutrix, after testifying directly to the facts connected with the alleged crime, had also testified that she had complained to the witnesses Spell and Morgan, and it does not appear that any effort had actually been made to impeach the testimony so given up to the time that those witnesses were nailed. They were, however, called for the obvious purpose of corroborating the prosecutrix as to the fact that she had complained to them, and, having so done, they were subject to cross-examination by counsel for the defendant.
There seems to be an issue of fact between the counsel and the judge as to what was allowed on the cross-examination, and, under the settled jurisprudence of this court on that subject, we must accept the statement of the judge, in so far as it is consistent with itself and with the evidence brought up in connection with the bills of exception.
But the judge, after stating in bill No. 3 that “the court did not refuse to permit Joseph Spell to testify as to any details of the complaint alleged to have been made to him by the prosecutrix,” informs us that “the ■court refused to permit the question propounded to be answered,” etc., the question being, “Did Mrs. Foreman, in her complaint to you, state how many persons were at her house the night previous at the time she .alleged she was ravished?” and from the bill No. 5 it appears that the "defendant was denied the right, upon cross-examination, to interrogate the witness Morgan as to any details whatever of the statement made to him.
If the ruling of the court under which ■cross-examination was permitted as to any of the details of the complaints made to the witnesses was correct, it should have been extended and applied to all such details, and it is not a sufficient answer to the objection that it was not so extended and applied that the testimony elicited might have had the effect of contradicting of impeaching that of a witness whom the state had previously examined.
And that the ruling of the court was correct in so far as the cross-examination was permitted, and was incorrect in so far as the cross-examination was not permitted, there seems to be no room for doubt. In the case of State v. Langford, 45 La. Ann. 1179, 14 South. 181, 183, 40 Am. St. Rep. 277, this court, through Mr. Justice Parlange, said: “In the case of the State v. Charles Robertson, 38 La. Ann. 618 [58 Am. Rep. 201], this court held that a person to whom a complaint had been made by the victim of a rape, when placed on the witness stand, cannot be permitted to repeat all the details of the outrage, and the name of the ravisher as reported to the witness, but can only testify as to the fact of the complaint having been made, and as to the condition of the victim when making the complaint. Bishop, in his treatise on Criminal Procedure, states that this is the English and the more common American practice. To the same effect is Greenleaf on Evidence. When the statements are part of the res gestae they are excepted from the operation of the rule just stated, and they may also be drawn out by the defendant on cross-examination. They may be admitted to corroborate the testimony of the prosecutrix, but only when her testimony has been impeached. When they are offered by the state in making out the case against the accused, and before the testimony of the prosecutrix -has been impeached, they will be rejected,” etc. See, also, Rice on Evidence, vol. 3, p. 826.
Bill No. 1 states that “counsel for defendant challenged Felix Meaux, who had been called as a juror, for cause, on account of his imperfect acquaintance with the English language, and on the further ground that he testified that he had formed an opinion on the merits of this case which it would require strong evidence to overcome. The court ruled that the juror was competent, and the defendant challenged him peremptorily. Before the jury was completed, defendant had exhausted his peremptory challenges. * * *
“By the Court: No objection was made to the juror because he did not understand the English language. The court did not rule on this question — was not called upon to do so. The juror * * * understands English thoroughly, and speaks it fairly well, al *691 though he has some trouble in expressing himself. He was challenged because he stated that he had formed an opinion, but his answers to the questions propounded show conclusively that he could disregard and would disregard that opinion, and decide the case strictly upon the evidence adduced on the trial. The court ruled that the juror was competent. He was challenged peremptorily. It was not pretended at the time, it was not pretended during the trial, and it is not pretended now, that an obnoxious juror has been forced upon the defendant. No such complaint was made or could .be made.”
The examination of the juror upon his voir dire was as follows:
“Q. Have you heard anything about the case against Joseph, alias Daniel McCoy, accused of committing rape upon the person of Mary Alice Spell, widow of Asa Foreman ? A. Yes. Q. From what you have heard, did you form or express any opinion as to the guilt or innocence of the accused? A. I have formed an opinion which can be changed by witnesses. Q. Then, if taken upon this jury, you feel that you could try this case solely and strictly upon the evidence that you would hear from the witnesses under oath? A. Yes.
“Cross-examination:
“Q. Are you well acquainted with the English language ? A. I understand it very well, but I cannot talk it well. Q. Mr. Meaux, you have stated to me a while ago, that you had formed an opinion in this case which would require strong evidence to overcome, did you not? A. Yes, sir. Q. Then your mind is not in such a condition as to be influenced solely by the evidence submitted on the trial, but it would be influenced, to a great extent, by the existing opinion that you now entertain in regard to the merits of the case? A. Yes. Q. Mr. Meaux, are you sure that you understand the English language sufficiently to thoroughly understand and appreciate the evidence that may be adduced on the trial? A. Yes.
“By the Court: Mr. Meaux, is that opinion, which you say you have formed, a fixed and determined opinion? A. No, sir. Q. That opinion, if I understand you, would yield and give way to the testimony given upon the trial of the case? A. Yes, sir. Q. Do you feel that you could go into the jury box and disregard the opinion which you say you have formed, and decide this case-strictly upon the evidence you would hear in this case? A. Yes.”
Taking the whole of the examination of this witness together, the most that can be made of it is that he had formed and expressed an opinion that it would have required strong evidence to overcome; that his. mind was not in a condition to be influenced solely by the evidence to have been submitted on the trial, and that it would have been influenced to a great extent by the opinion formed already; but that, nevertheless, he-could have gone into the jury box and, as we take it, if the evidence proved strong enough to overcome it, have disregarded that opinion, and have decided the case upon such evidence. We do not consider that he would have made a good juror, and are of opinion that the challenge for cause should have-been sustained. People v. Casey, 96 N. Y. 115; Rizzolo v. Com., 126 Pa. 54, 17 Atl. 520. The fact that, having been challenged peremptorily, he did not serve on the jury,, does not cure the difficulty, inasmuch as it appears that all of the defendant’s peremptory challenges had been exhausted before the jury was obtained. State v. Fourchy, 51 La. Ann. 229, 25 South. 109.
For the reasons given, it is ordered, adjudged, and decreed that the verdict and sentence appealed from be annulled and set aside, and that this case be remanded, to be-proceeded with according to law, the defendant in the meanwhile to remain in custody.