MONROE, J.
Defendant was convicted under an indictment which charges that he—
“while serving as a duly qualified and elected member of the police jury of Vernon parish, La., did willfully and feloniously, and with intent to be feloniously and corruptly induced and influenced to exercise and perform his duties as a police juror with partiality and favor, then and there willfully and feloniously accept and receive the sum of $250 from W. W. Thompson as a bribe and with the felonious intent of being induced and influenced to perform and exercise his duties as a police juror with partiality and favor, and that the said sum of $250 was feloniously received and accepted by the said T. J. Addison as a bribe for keeping the police jury from letting any contract for the estimating of the timber of Vernon parish, at the October meeting of said police jury, contrary to the form of the statutes,” etc. .
[1] 1. Defendant’s first bill of exception was reserved to the overruling of a motion to quash the indictment, on the ground that it sets forth the violation of no law of the state.
Section 1 of Act 78 of 1890 reads:
“That any person who shall directly or indirectly offer or give any sum or sums of money, bribe, present, reward, promise or any other thing to any officer, state, parochial or municipal, or to any member or officer of the General Assembly, with intent to induce or influence such officer or member of the General Assembly to appoint any person to office, to vote or exercise any power in him vested, or to perform any duty of him required with partiality or favor, the person giving or offering to give, directly or indirectly, and the officer or member of the General Assembly so receiving, or agreeing to receive, any money, bribe, present, reward, promise, contract, obligation or security, with the intent or for the purpose or considera *645 tion aforesaid, shall be guilty of bribery and, on conviction thereof. * * * ”
The court, after referring to the act of 1878 (Act No. 69 of 1878, § 7), ruled, as follows:
“The indictment, with proper averments, charges the defendant as being a parochial officer, and, as such, with receiving from'W. W. Thompson the sum of $250, as a bribe, to vote, with partiality and favor, against having the timber of Yernon parish estimated, or, in other words, to prevent the police jury from having such estimation of timber made. The court is of opinion that the averments in the indictment charge an offense as denounced by the statute above referred to, and therefore overruled the motion to quash.”
The contention of defendant’s counsel is set forth in their brief substantially as follows:
“Act No. 78 of 1890 was intended to punish officers for receiving bribes to discharge, with partiality and favor, the duties required of them, in their official capacities. There are three things absolutely necessary: First. He must receive the bribe to act with partiality and favor. Second. He must act, or agree to act, with partiality and favor. Third. The act or duty he is to perform must be one required of -him in his official capacity.”
The argument, then, is that, whilst the bill charges, in general terms, that defendant received the bribe to discharge his duty as police juror, with partiality and favor, that general charge is controlled by the particular charge that he “received said bribe to keep the police jury from letting any contract for the estimating of the timber of Vernon parish, at the October meeting of said police jury”; that it is not alleged “how he was to keep the police jury from letting the contract”; or “that his act in so doing was done with partiality or favor”; or that “to keep or not to keep the police jury from letting the contract was a duty required of him as an officer.” To constitute bribery “in an officer,” the argument continues, “for the discharge of a duty required of him, it must not only be alleged, but it must appear, in law, to be in the performance of a duty required of him, under the law, as such officer. Not only did the bill fail.to allege this material fact, but, on the face of the bill, it is absolutely clear that there is no such duty as estimating the timbered lands of a parish imposed by law on the police jury of the parish. There is no law authorizing any such act, and therefore, whatever may have been his acts, he was not acting in the purview of any duty required of him by virtue of his office, and therefore does not fall within the statute.”
The police juries are authorized by law “to lay such taxes as they may judge necessary to defray the expenses of their respective parishes” (R. S. § 2743); and they are also constituted boards of reviewers, with power to review the action of the assessors, upon the complaints of taxpayers, in particular cases (Act No. 170 of 1898, §§ 23 and 24). To discharge, intelligently, either of the functions mentioned, they must be informed, from some source, of the value of the property which is subject to the jurisdiction thus conferred upon them, and we find no law which denies them the right to obtain such information elsewhere than from the assessors or the taxpayers. It is, however, wholly immaterial, for the purposes of the question here presented, whether or not the police jury had any duty to perform in the matter of ascertaining the < value of the timber in Vernon parish. The law makes it a crime for a member of such a body to receive any bribe, present, reward, promise, or other thing, with intent to be induced or influenced to vote or exercise any power in him vested, or to perform any duty of him required, witl/' partiality or favor. And the indictment charges that defendant “did willfully and feloniously, and with intent to be feloniously and corruptly induced and influenced to exercise and perform his duties as a police juror, with partiality and favor, * * * *647 accept and receive the sum of $250 from W. W. Thompson,” etc., after which there follows the specification:
“That the said sum of $250 was feloniously received and accepted by the said T. J. Addison as a bribe for keeping the police jury from letting any contract for the estimating of the timber of Vernon parish, at the October meeting of said police jury,” etc.
Defendant being a member of the police jury, it was his duty to participate in its deliberations concerning any measure pending before it.; and if, in his judgment, the adoption of the measure was within the power conferred on that body and was likely to conduce to the welfare of the parish, it was his duty to vote for, and use his influence to facilitate, its adoption. But if, in his judgment, the adoption of the measure was not within the power of the police jury, or would not conduce to the welfare of the parish, it was h'is duty to vote, and use his influence, to prevent its adoption. Beyond that, if, in his capacity as a police juror, he conceived the idea of introducing a particular measure, as, for instance, an ordinance for the letting of a contract for the estimating of the timber of the parish, or if it came to his knowledge that the introduction of such a measure was contemplated by some other member, his duty was the same as though the measure had been introduced; that is to say, if he believed it to be good and within the power of the police jury, he should give it his support, and, if he believed otherwise, he should oppose its introduction and adoption. In any contingency, therefore, in which he might be called on to act in his capacity of police juror, whether with respect to- a legal or an illegal ordinance, or to an ordinance pending or in contemplation, he had a duty to perform, and he was under the dominion of a law which declares that any officer, such as he, who shall receive any money, etc., with the intent to be induced or influenced “to vote or exercise any power in him vested or to perform any duty of him required, with partiality or favor,” shall be guilty of the crime of bribery. As supporting the view thus stated, we are referred by the learned counsel for the state to the case of State v. Ellis, 33 N. J. Law, 102, 97 Am. Dec. 707, in which it was held that:
An “offer of money to a member of the common council of the city to vote in favor of an application for leave to lay a railroad track along one of the streets of the city is bribery, whether or not the council had authority to make the grant.”
And to the case entitled In re Bozeman, 42 Kan. 451, 22 Pac. 628, in which it was held that:
“The offense of attempting to bribe is complete when an offer is made, although * * * not within the jurisdiction of the officer.”
In State v. McCrystol, 43 La. Ann. 914, 9 South. 922, this court held that:
“An information charging an attempt to bribe a juror, in the language of the statute, specifying the particular juror, and the nature of the bribe offered, and setting forth the unlawful intent, conforms to all the requirements of criminal pleading.”
In the body of the opinion in the case thus cited it was said:
“The information sets forth the offense in the substantial words of the statute. It specifies the nature of the offer to bribe a named juror by promising to give him the sum of $500, and the object, viz., to induce him to favor the defendant in the particular cause in which he was summoned, by performing his functions as a juror with favor and partiality toward him. We fail to see any lack of certainty in the charge, or any failure to apprize the defendant fully of the nature and scope of the accusation he had to meet.”
And so we say here, for the indictment in this case sets forth the offense substantially in the language of the act of 1890.
[2, 3] 2. Bills of exception were received to the overruling of defendant’s challenges, for cause, of R. J. McAlpin and C. L. Millican, who were called to serve as jurors, and defendant expended two of his peremptory challenges in order to keep them off the jury, *649 and eventually (as his counsel says, though it should have been in the bill of exception) exhausted all of his peremptory challenges. We find, upon an examination of McAlpin’s testimony, given on his voir dire, that he stated that he had- heard the case discussed by a number of parties; that he had an opinion, and would go into the jury box with it. He was then asked by the same counsel (representing defendant):
“If you are sworn as a juror in this case, and no evidence introduced at all in the matter, you would have an opinion, based on what information you now have ? * * * A. No, sir; I would not, in a case of that kind. Q. You could not render a verdict of any kind; you would neither acquit nor convict? A. I would not feel like doing either. Q. It would take a lot of evidence to remove the opinion you now have in your mind? A. Yes, sir. Q. Are you a man that, once you form an opinion, that opinion is pretty well fixed? A. When I form an opinion on what I hear about a thing. Q. And when you have formed that opinion, it is right hard to remove? A. It would take evidence to change it. * * * Q. Then you_ have your opinion, one way or the other, and it is already fixed? A. From what I have heard. Q. Not so fixed that it could not be changed by evidence? A. No, sir.”
Cross-examination by the judge:
“Q. In your examination by the district attorney, you stated the opinion that you formed, that you now have, that you could lay it aside and try the defendant wholly on the law and the evidence adduced on the trial, did you? A. Yes, sir. Q. Is that a fact? A. Yes, sir. Q. I-Iave you any interest, one way or the other, either directly or indirectly, in the outcome of this prosecution? A. No, sir. Q. Have you any bias or prejudice either for or against the defendant? A. No, sir. Q. Have you talked to any of the witnesses in this case? A. No, sir; I don’t think I have; I don’t know of any. Q. Is it an opinion in your mind or is it an impression? A. I think it is an opinion, the way that I judge it to be. Q. Is that based on facts or upon rumors? A. It is on what I have heard; what I have read in the newspapers and heard discussed in town. Q. Would that, whether opinion or impression, readily or easily yield to sworn testimony that is adduced on the trial? A. Yes, sir. Q. Would that opinion affect you in a fair and just consideration of the testimony that will be adduced on the trial of this case? A. No, sir.”
The main objection to Millican seems to have been that he admitted that he and Thompson (the prosecuting witness, who is a millman) were close friends, and that some impression had been made upon his mind by what Thompson and others had told him. He further testified, however, that he had 'no bias or prejudice in the matter; that his impression, or opinion, would readily yield to testimony; that he could totally disregard it if chosen as a juror; that he had not thought much about what he had heard; that it did not make much of an impression; and that it would not be considered in comparison to testimony that might be adduced on the trial.
Defendant’s counsel say (referring to Mc-Alpin):
“It is true that the juror said * * * his opinion would yield to evidence, and he felt that he would be a fair and impartial juror, but we must go further than that; to leave it to the opinion of the juror as to whether he is fair or unfaii-, biased or unbiased, etc., while it has often been done, is dangerous. The court should consider the facts surrounding the juror, his knowledge of the facts, etc., and be its own judge as to whether he is a fair juror or not.”
And that is what happened; the question was left to the judge of the district court, not to the juror, and the judge decided that he was a competent juror., He was in a better position to give the decision than we are; but, with such information as the transcript affords, we agree with the trial judge. Knowledge of public events, happening in communities, and even throughout the world, reaches the better class of citizens, through the newspapers or otherwise, and the information creates an impression upon the mind, or an opinion, but the individual of average intelligence is not apt to accept mere rumor, or a newspaper “story,” for the whole truth, and is easily disabused of such impressions or opinions when confronted with evidence from authentic sources. The trouble in connection with the selection of jurors seems to be that they are unaccustomed to the ways and the terminology of the legal *651 fraternity, are enibarrassed by the positions in which they are placed, the questions which they only partly understand, and their limited vocabularies, and many of them, being unable to put their own ideas into words, accept the suggestions contained in the questions that are propounded to them in despair of doing better for themselves. The question here presented has been frequently decided by this court as it has been decided in this case, and we have frequently held that the question of the competency of a juror is left largely to the discretion of the trial judge. State v. Johnson et al., 38 La. Ann. 688; State v. Mayfield, 104 La. 173, 28 South. 997; State v. Hebert, 104 La. 227, 28 South. 898; State v. Bouvy, 124 La. 1055, 50 South. 849.
The examination of Millican differed from that of MeAlpin in that he was a close friend of the prosecuting witness, Thompson, and had been told by Thompson of what had happened between him and the defendant, and, like MeAlpin, he had received information from other sources. His testimony, however, reads like that of a candid and truthful man, and he states that he had not thought much about what he had heard; that it had not made much of an impression on his mind; and that such impression as had been made would yield readily to testimony that might be adduced. It may be added that both MeAlpin and Millican were challenged, peremptorily, by defendant, after his challenges, for cause, had been overruled, and they did not serve on the jury by which defendant was tried. We may further add that, whilst we learn from the brief of defendant’s counsel, and from a casual statement made by him in giving certain testimony, that defendant eventually exhausted his peremptory challenges, we find no intimation anywhere that he needed any, after they were exhausted; hence there is no disclosure of injury resulting from the ruling in the two cases above considered, even if that ruling were found to have been erroneous, and we are not prepared to say that such error would call for the setting aside of the conviction. Marr’s Or. Jur. of La. p. 541, § 326; State v. Woods, 112 La. 622, 623, 36 South. 626.
[4] 3. Defendant excepted to the refusal of the court to give special charges to the following effect:
(a) That if the jury found that defendant was approached upon the subject and induced to accept a bribe for the purpose of catching him, and that he allowed himself to be so induced solely for the purpose of entrapping and punishing the bribe giver, they should bring in a verdict of acquittal.
(b) That, in order to convict, under Act No. 78 of 1890, for receiving a bribe to affect his official action, it must be alleged and proved that such action was required of defendant, by law, in his capacity as a police juror; and
(c) That he received the bribe for the purpose of influencing him to discharge the duties imposed on him in a partial and favorable manner; and that, if the jury found that defendant received the bribe to do an act which showed no favoritism or partiality and was just, right, and lawful, they should bring in a verdict of acquittal.
(d) That if the jury found that defendant receiyed the money apparently as a bribe, with no intention of allowing it to influence him, or of appropriating it to his own use, but solely for the purpose of laying a trap for the bribe giver and of furnishing evidence against him, they should acquit defendant.
(e) That, if the jury entertained a reasonable doubt as to whether defendant received the bribe with evil intent or with intent to lay a trap for the bribe giver, they should give him the benefit of such doubt and acquit him.
*653 We find the requested charges (save that contained in the concluding paragraph of charge “e”) incorporated, substantially, and as it appears to us lucidly, in the able and exhaustive general charge given by the learned trial judge, and we do not find that defendant has any just cause of complaint that they were not given in the precise form in which they were tendered.
[5] 4. In his motion for new trial, defendant set up the various grounds which have been here considered, and some others which have not been insisted on in this court. The only matter not considered, and still insisted on, is the following, to wit: That John Pelt, one of the jurors selected from the de talibus list, was biased and prejudiced against defendant and had formed and expressed a fixed and unyielding opinion against him; that he had openly avowed his conviction that defendant was guilty, and had stated that, if he (Pelt) could get on the jury, he would convict him; but that, on his voir dire, he had answered, positively and emphatically, that he had' not formed an opinion and knew of no reason why he should not render a fair and impartial verdict.
In support of the foregoing allegations, defendant filed the affidavits of D. E. Dykes and W. H. Bridges, and there was considerable testimony taken on the hearing of the motion for new trial, concerning which the trial judge has said:
“The ninth ground was overruled, because, after hearing the testimony thereon, the court was clearly of the opinion that the charge against the juror John Pelt was wholly false.”
Our reading of the testimony has failed to satisfy us that the judge erred in the conclusion stated, and we are of opinion that an attack upon a verdict of conviction, upon the ground relied on by defendant, should be sustained by satisfactory evidence, and that when the evidence is conflicting, and the judge a quo, after due consideration of it, refuses the new trial, this court should not readily reverse his ruling.
Judgment affirmed.
PROYOSTY, J., being absent on account of illness, takes no part.