HIGGINS, Justice.
 

 The accused was indicted for the murder of Harold Posey, tried and convicted as charged without capital punishment and sentenced to life imprisonment. He appealed and relies upon alleged errors said to be patent upon the face of the record and thirteen bills of exception reserved during the course of the trial for the annulment of the verdict and the sentence.
 

 The first error said to appear upon the face of the record resulted from the trial judge permitting the State to amend the indictment by changing the first name of the deceased from “Harold” to “Andrew Harrison (Hal),” while a plea of insanity filed by the defendant was pending before the court. The defendant objected on the ground that the plea of insanity had the effect of staying further proceedings until the report of the Sanity Commission— which later found the defendant sane— was returned.
 

 The pertinent part of Article 253 of the Code of Criminal Procedure provides:
 

 “ * * * The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. * *
 
 *»
 

 The ruling of the trial judge was proper under the law.
 

 It is said that it appears from the record that when the motion to quash the indictment was tried, the defendant was not present in court when certain testimony was
 
 *487
 
 taken in connection therewith and, therefore, this was a reversible error, because under the law the accused must be present during the entire course of the trial, and particularly when evidence is being adduced in the case.
 

 The State admits that the accused was not present in court in person, and was represented there by counsel when the motion to quash was tried, but contends that under the law it was not necessary for the accused to be present at that time because issue was not joined.
 

 Article 256 of the Code of Criminal Procedure reads as follows:
 

 “Before arraignment there is no issue between the defendant and the State, but if the defendant voluntarily enters upon the trial without arraignment it shall be considered as if he had pleaded not guilty.”
 

 In State v. Layton, 180 La. 1029, 158 So. 375, 377, the Court said:
 

 “The jurisprudence of this state is settled to the effect that one who is tried for a felony must be personally present in court at every important stage of the trial from the moment of his arraignment to his sentence.”
 

 The record shows that the defendant was personally present in court at every important stage of his trial from the moment of his arraignment to his sentence. Therefore, this bill is without merit. See, also, State v. Hayden, 71 La. 495, 131 So. 575.
 

 Bill of exception No. 1 was reserved when the trial judge overruled the defendant’s challenge for cause of the prospective juror, O. W. Hogan. The counsel for defendant then peremptorily challenged Mr. Hogan and he did not serve as a juror on the trial of the case. This prospective juror was an intelligent and highly regarded citizen. He stated that he had discussed the case with the two state eyewitnesses to the killing and had formed a deliberate opinion, and before changing it he would require evidence; and that he and the deceased were employees of the City of Ruston and were good friends. When the district judge and the district attorney questioned him, he stated that he would set aside the opinion that he had formed and consider the case solely and only upon the evidence adduced in the court. However, when he was .questioned by the defense attorney, he was quite uncertain that he could be a fair and impartial juror in view of his friendship with the deceased and the deliberate opinion he had formed after hearing the statements of the two state eyewitnesses and that if he were the defendant, he would not wish to be tried by a jury, composed of jurors whose minds were in the same condition as his. While it is true the trial judge had the discretion of deciding whether or not the juror was competent (State v. Bouvy, 124 La. 1054, 50 So. 849, State v. Hebert, 104 La. 227, 28 So. 898 and State v. Mayfield, 104 La. 173, 28 So. 997, 998), nevertheless it is our opinion that he erroneously refused to sustained the defendant’s challenge for cause. State v. Joiner, 163 La. 609, 611, 112 So. 503, and State v. McCoy, 109 La. 682, 692, 33 So. 730.
 

 
 *488
 
 The trial judge, in his per curiam, maintains, first, that the juror was competent, but, secondly, he rests his ruling on Article 353 of the Code of Criminal Procedure, which reads as follows: '
 

 “No defendant can complain of any ruling sustaining or refusing to sustain a challenge for cause, unless his peremptory challenges shall have been exhausted before the completion of the panel; moreover, the erroneous allowance of challenges for cause affords the defendant no ground of complaint, unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling is forced to accept an obnoxious juror.”
 

 In the instant case, it must be borne in mind that Hogan, who was peremptorily challenged by the defendant, did not sit as a juror in the case, and that after the defendant exhausted his twelve peremptory challenges, he made no complaint and it does not appear from the record that he was thereafter forced to accept an obnoxious juror; on the contrary, however, the per curiam of the district judge shows that after the defendant exhausted his twelve peremptory challenges, he accepted every juror without any complaint or objection whatsoever and that all of the jurors, who sat on his case, were accepted voluntarily by him.
 

 The state contends that under the above quoted article of the Code of Criminal Procedure, before the defendant can complain of the ruling of the trial judge in refusing to sustain his challenge for cause, it must appear from the record (1) that the trial judge erroneously failed to sustain the defendant’s challenge for cause, (2) that the defendant exhausted all of his peremptory challenges before the completion of the jury panel, and (3) that the defendant, by such erroneous ruling of the trial judge in not sustaining his challenge for cause, was forced to accept an obnoxious juror.
 

 Counsel for the defendant contends that under the jurisprudence, as well as under the correct interpretation of Article 353 of the Code of Criminal Procedure, in order to obtain relief the defendant only has- to show that the trial judge erroneously failed to sustain his challenge for cause and that he thereafter-exhausted all of his pe.remp•tory challenges before the completion of the jury panel.
 

 Whether or not an accused convicted of a criminal offense is entitled to obtain an annulment of the verdict of the jury and the sentence of the court and a new trial by merely showing, first, that the trial judge-erroneously overruled his challenge for cause against the prospective juror and thereby illegally compelled him to use one of his peremptory challenges in ordér to prevent the juror from sitting in his case, and, second, that he subsequently exhausted all of his peremptory challenges before the jury panel was completed, is a question that has caused conflict in our jurisprudence. Some of the authorities declare that it is only necessary for the defendant on appeal to show that the trial court’s ruling was incorrect and that he subsequently exhausted his peremptory challenges. Other cases hold
 
 that,
 
 in addition to the fore
 
 *489
 
 going circumstances, the defendant must also show that as a result thereof, he was compelled to accept an obnoxious juror. Examples of the former authorities are State v. McCoy, 109 La. 682, 689, 33 So. 730 and State v. Guillory, 146 La. 434, 439, 83 So. 754. Authorities holding the latter view are State v. Creech, 38 La.Ann. 480, State v. Tibbs, 48 La.Ann. 1278, 20 So. 735, and State v. Addison, 134 La. 642, 64 So. 497, State v. Messer, 194 La. 238-253, 193 So. 633, and State v. Crawford, 195 La. 428-430, 196 So. 921. It will be noted, in the foregoing cases, no reference is made to the conflicting authorities. For a discussion of the subject, see Marr’s Criminal Jurisprudence (1923), Volume 1, page 700, Section 461.
 

 Apparently the vacillating jurisprudence above referred to was the reason why the framers of our Code of Criminal Procedure inserted Article 353 therein to clarify the law.
 

 In State v. Tibbs, supra, the Court, on page 1282 of 48 La.Ann., on page 736 of 20 So., said:
 

 “ * * * Assuming, however, as correct, that the court should have at once ordered Barrow to stand aside, and have hot compelled Tibbs to peremptorily challenge him, we find no resulting injury, for it is not claimed that ‘in consequence of the judge’s ruling defendants had been compelled to accept an obnoxious juror.’ State v. Creech, 38 La.Ann. 480.”
 

 In the case of State v. Addison, 134 La. 642, 651, 64 So. 497, 500, the accused was indicted, convicted, and sentenced for accepting a bribe, and he appeáled. Bills of exception Nos. 2 and 3 were reserved to the court’s ruling in refusing to sustain the defendant’s challenges for cause against Messrs. McAlpin and Millican, who were called to serve as jurors. As a result of the judge’s ruling the defendant used two of his peremptory challenges in order to keep them off the jury and thereafter exhausted all of his peremptory challenges. After the court discussed the facts elicited from these two prospective jurors on their voir dire examination and pointed out that the trial judge under the law had discretion in deciding whether or not they were competent, it said:
 

 “* * * It may be added that both Mc-Alpin and Millican were challenged, peremptorily, by defendant, after his challenges, for cause, had been overruled, and they did not serve on the jury by which defendant was tried. We may further add that, whilst we learn from the brief of defendant’s counsel, and from a casual statement made by him-in giving certain testimony, that defendant eventually exhausted his peremptory challenges, we find no intimation anywhere that he needed any, after they were exhausted;
 
 hence there is no disclosure of injury resulting from the ruling
 
 in the two cases above considered,
 
 even if that ruling were found to have been erroneous, and we cure not prepared to say that such error would call for the setting aside of the conviction.
 
 Marr’s Cr. Jur. of La. p. 541, § 326; State v. Woods, 112 La. [617], 622, 623, 36 So. 626.”
 

 In the case of State v. Joiner, 163 La. 609, 616, 112 So. 503, this Court referred
 
 *490
 
 to and discussed the case of State v. Addison, supra, and pointed out that from what was stated, it appeared the justices were not entirely satisfied with the trial court’s ruling on the defendant’s challenge for cause, quoting the
 
 last
 
 part of the above excerpt from the opinion.
 

 In the case of State v. Messer, 194 La. 238, 253, 193 So. 633, 638, the trial judge, in his per curiam, follow'ed the same course adopted by the district judge in the instant case, by first stating that the challenge for cause by the defendant was properly overruled, and if not, that Article 353 of the Code of Criminal Procedure was applicable, because it appeared from the record that the defendant was not forced as a result of the ruling to accept an obnoxious juror. The two jurors objected to having been peremptorily challenged by the defendant and did not sit in his trial. In discussing the matter, this Court stated:
 

 “Defendant admits in his bill of exceptions, reserved to the ruling of the court, that he had not exhausted any of his twelve peremptory challenges, at the time his challenge for cause of the two jurors was made and was overruled by the trial judge.
 

 “Although defendant states in his bill that thereafter he exhausted all of his challenges, he does not pretend in his bill that he was forced to accept an obnoxious jurór, as he is required to show under the ■decisions of this court. State v. Addison, 134 La. 642, at page 651, 64 So. 497; State v. Creech, 38 La.Ann. 480; State v. Woods, 112 La. 617, 622, 623, 36 So. 626.”
 

 Thereafter the Court concluded that the defendant’s challenge for cause, as to these two jurors, was not well-founded and that the ruling of the trial judge was correct.
 

 Article 557 of the Code of Criminal Procedure reads as follows:
 

 “No judgment shall be set aside, or a new trial granted by an appellate court of this State, in any criminal case, on the grounds of misdirection of the jury or the improper admission or rejection of evidence, or as to error of any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.”
 

 In the case of State v. Henry, 197 La. 999-1019, 3 So.2d 104, 111, the accused had been twice tried and convicted of murder and sentenced to death. Bill of Exception No. 13 was based upon the refusal of the trial judge to sustain the defendant’s challenge of a certain prospective juror for cause. In holding that the trial court had committed reversible error, we said:
 

 “The fact that a man has formed an opinion as to the guilt or innocence of an accused does not necessarily disqualify him from serving as a juror. If he states on his voir dire examination that his opinion would readily yield to the testimony adduced, that he could and would lay aside that opinion, he is competent. But
 
 *491
 
 where, as in the instant case, the juror makes it plain that he has an opinion and that he is not sure that he can lay it aside, he is not competent.
 

 “After the court overruled defendant’s challenge for cause, the juror was then challenged peremptorily, and the record shows that defendant had not then exhausted her peremptory challenges. But the record shows affirmatively that she did exhaust her peremptory challenges before the jury was completed, and that she was compelled to accept objectionable jurors after her peremptory challenges were exhausted.
 

 “The established rule is that: ‘Where, in a criminal prosecution, a challenge for cause is improperly overruled, and the defendant’s peremptory challenges are exhausted before the jury is obtained, the accused is prejudiced, and the verdict will be set aside.’ Syllabus, Paragraph 6, State v. McCoy, supra. See State v. Guillory, supra, Syllabus, Paragraph 5.
 

 “We think the rulings complained of, as set forth in Bills No. 7, 8, 9, 11, 13, and 14, were erroneous and highly prejudicial, and constitute reversible error.”
 

 It will be noted that the Court expressly pointed out that the record affirmatively showed that the accused was compelled to accept objectionable jurors after her peremptory challenges were exhausted. The statement by this Court — that where the defendant’s challenge for cause is improperly overruled and he has exhausted his peremptory challenges before the jury is impaneled, the accused is prejudiced and the verdict will be set aside — is predicated upon the cases of State v. McCoy and State v. Guillory, supra, which, as we have already pointed out, are in conflict with the other authorities which require that the accused show that he was compelled to accept an obnoxious juror. As the accused in the Henry case had been compelled to accept the obnoxious jurors who sat in the trial of her case, the holding of this Court was eminently correct.
 

 In the case of State v. Crawford, 195 La. 428, 430, 196 So. 921, 922, the defendant was charged, convicted and sentenced for cattle stealing. Bill of exception No. 2 was reserved by the defendant to the ruling of the trial judge, ordering seven additional jurors to be drawn in order to complete a jury of twelve, after it became apparent that the accused should be tried by a jury of twelve instead of a jury of five, which had already been impaneled and sworn and to whom the district attorney had read the indictment. The accused had already exhausted his six peremptory challenges in selecting the jury of five and had pointed out to the court that he would thereafter be compelled to select the remaining seven jurors with only six challenges. Defendant also argued that under Article 277 of the Code of Criminal Procedure, he was entitled to have a mistrial entered and a new trial commenced with all of his peremptory challenges restored to him and to have the five jurors already selected retendered to him on their voir dire examination for acceptance or rejection. The opinion states:
 

 
 *492
 
 “On the other hand, counsel for the state argues that there is nothing in the record to show that the defendant was forced to accept an obnoxious juror or in what manner he was prejudiced by the ruling of the trial judge, and that, therefore, he is not entitled to have his conviction and sentence set aside and a new trial granted.”
 

 The Court then pointed out that cattle stealing was a felony, and necessarily punishable at hard labor and, therefore, triable by a jury of twelve and that a trial by a jury of five would be an absolute nullity. The Court also concluded that on the trial of the case on the charge of felony, jeopardy only began when the jury of twelve had been selected and' sworn, and the indictment read to them. The Court then said:
 

 “ * * * It necessarily follows, therefore, that the trial judge was correct in ordering that seven additional jurors be selected to complete the legal panel of twelve to try the defendant in -this case, and unless he (the defendant) can show that he was prejudiced by this ruling, he is not entitled to have his conviction and sentence set aside. Article 557 of the Code of Criminal Procedure; State v. Campbell, 134 La. 828, 64 So. 765; State v. Sweeney, 135 La. 566, 65 So. 743; State v. Barnhart, 143 La. 596, 78 So. 975; State v. Pierfax, 158 La. 927, 105 So. 16; State v. O’Day, 188 La. 169, 175 So. 838; and State v. Thornhill, 188 La. 762, 178 So. 343.
 

 “The only complaint made by the defendant is that such procedure is illegal and highly prejudicial to his constitutional and statutory rights, but in his bill of exception he does not give us the basis for such conclusion, nor does his counsel in his argument (brief) show how the defendant was prejudiced.
 

 “From our review of the record we find that while défendant’s counsel did have read into the minutes of the court, prior to his acceptance of the twelfth juror, the fact that the defendant had already exhausted his twelve challenges, he did not state that the juror was obnoxious or unacceptable to- him. Consequently, we fail to see in what manner the judge’s ruling could have resulted in a miscarriage of justice or be prejudicial to defendant’s constitutional or statutory rights.”
 

 Returning now to the provisions of Article 353 of the Code of Criminal Procedure, it is obvious that if the court gives the language of this article the interpretation contended for by counsel for the defendant, the last two lines of the Article, that is “ * * ■ * or unless the defendant by such ruling is forced to accept an obnoxious juror * * * ” will be entirely eliminated and given no legal effect. The words “such ruling” certainly refer back to the language “ * * * any ruling sustaining' or refusing to sustain a challenge for cause * * * ” appearing in the beginning of the Article. This is made clear because a successful but erroneously allowed challenge for cause by the State, under no circumstances, can compel the defendant to accept an obnoxious juror. There is no complaint here that any erroneous allowance of.challenge for cause
 
 *493
 
 by the State resulted in the prosecution getting more peremptory challenges than it was entitled to by law. In short, the article means that even though the trial judge erroneously failed to sustain the defendant’s challenge for cause of the prospective juror and thereby forced him to peremptorily challenge the juror and although the defendant thereafter exhausted all of his challenges before the jury panel was completed, the accused is not entitled to complain of the erroneous ruling of the trial judge, unless it appears on the face of the record or by a formal bill of exception that he was forced or compelled to accept an obnoxious juror who sat in the trial of his case.
 

 This is not only the correct interpretation of the article of the Code of Criminal Procedure, but from the foregoing authorities cited in connection with this bill of exception, it appears that it is in keeping with the better view expressed in our jurisprudence prior to the adoption of the Code and consonant with the legislative policy expressed in Article 557 thereof.
 

 It is obvious that the State’s construction of Article 353 gives full legal efficacy to all of its provisions and particularly the last two lines above quoted.
 

 The argument that the State’s interpretation of the article gives it impractical effect because it places the accused and his attorney in the position of having to run the hazard, after all of his peremptory challenges have been exhausted, of offending a prospective juror .by challenging him and probably making him hostile to the accused, or, at least, prejudiced and biased against him after the accused is powerless to remove him from the jury: The answer to this contention is several fold: First, that the provisions of Article 353 of the Code of Criminal Procedure require the accused to challenge the juror, so as to have in the record evidence that the defendant was compelled or forced to accept an obnpxious juror, thereby showing that he suffered prejudice to his substantial constitutional or statutory rights, as he is required to do by Article 557 of the Code of Criminal Procedure, before he can have the verdict of the jury and the sentence of the court set aside and a new trial ordered by the court on appeal. Second, it is not at all certain that a juror, who had been challenged by the defendant and who sits in the trial after the judge overruled the defendant’s objection, will be biased or prejudiced against the accused or hostile to him, simply because the defendant’s attorney has stated that the juror has demonstrated by his voir dire examination that he is not a fair and impartial or competent juror within contemplation of the law. Third, if the defendant and his attorney are of the opin-’ ion that the objection to the juror will create an unfavorable impression against him, they could simply request the court to retire the selected jurors and the prospective juror from the court room, and the judge’s ruling, adverse to the defendant, could then be dictated into the record and a proper bill of exception reserved, without the jurors knowing anything about it. Thus, in that way, the fears of the defendant against prejudice by the juror would be obviated. Fourth, if the defendant is
 
 *494
 
 compelled to accept an obnoxious juror, he has a right to reserve a perfectly good bill of exception.
 

 The defendant’s counsel, in this case, made no objections to any of the jurors selected after he had exhausted all of the peremptory challenges and made no request of the court that he would like to have an objection to the prospective juror made outside of his presence' and the selected jurors’ presence. On the contrary, the record shows that he accepted the jurors without any protest or objection whatsoever. Consequently, he has completely failed to show wherein the defendant was prejudiced or that any of his substantial statutory and constitutional rights were impaired.
 

 Bill of exception No. 2 grows out of the following situation, which arose during the course of the trial: The judge ordered the clerk to produce in open court the tales jury box from which the names of forty tales jurors were drawn to be summoned to appear instanta for service as jurors in the case. A list containing the names of the forty tales jurors was handed to the sheriff and he proceeded to summon them, and the court adjourned at 1:30 p.m. There is conflict between the attorney for the defendant, the district attorney and the trial judge as to what transpired thereafter. The defendant’s attorney’s version is that when the court reconvened at 1:30 p.m., not more than half of the forty tales jurors, who had been drawn, had been summoned and were present for jury service. The defendant objected to proceeding' further with the trial until such time as all the jurors should be served with their summons, or until the returns of the sheriff were filed in the case to show whether service had been actually made on the jurors or whether or not service on the jurors was impossible. Counsel for the defendant states that the court overruled the request and ordered the defendant to proceed with the trial, whereupon he reserved a bill of exception.
 

 The district judge and the district attorney state that when the defendant objected to further proceedings until the sheriff reported upon the services made or attempted to be made upon all forty of the tales jurors, the judge ordered a thirty minute recess for the purpose of giving the sheriff additional time
 
 [1]
 
 to serve the summons and make his report to the court and that when the half hour recess was over, the sheriff made a report on every juror as to whether or not he had been summoned and which ones were available and those who were unavailable. The case then proceeded without the defendant having renewed his objection.
 

 The trial judge, in his per curiam, states:
 

 “The Sheriff reported that there were several of the tales jurors out of the parish and away from home, making it impossible for him to serve them without considerable delay, but all of them that he was able to service came to Court and were submitted to counsel for examination and acceptance or rejection, such as he desired.”
 

 The accused’s claim of prejudicial error, under these circumstances, is not
 
 *495
 
 well-founded, because all of the tales jurors who could be served were served and were submitted in the course of the trial to the defendant for examination and acceptance or rejection, as he desired.
 

 There is nothing in the record to ■contradict the per curiams of the district attorney and the district judge as to what transpired, and therefore, in the absence of •an affirmative showing to the contrary, the facts as stated by the trial judge will be accepted by this Court as true.
 

 Bill of exception No. 3 was taken by the defendant when the lower court entered an order, after the jury of twelve had been impaneled and sworn, directing the sheriff to select an alternate juror •under the provisions of Act No.
 
 6
 
 of the Legislature of 1940. The bill is first directed at the form of the order, because the sheriff was directed to select the alternate juror. The judge, in his per curiam, .states that the alternate juror was selected in strict compliance with the provisions of Act No. 6 of 1940, so that even if the order of the court is improperly worded, defendant had no right to complain because the alternate juror was drawn and qualified in .accordance with the Act of the Legislature, .authorizing the same to be done.
 

 The second ground of the exception is that Act No. 6 of 1940 is unconstitutional, being in violation of Article 7, Section 41, .of the Constitution of 1921, which guarantees the accused, in a capital case, the right to be tried by a jury of twelve, all of whom must concur to render a verdict, and that as the alternate juror was selected and sworn under the statute to serve in the case, the accused was tried by a jury of thirteen.
 

 The relevant part of Act No. 6 of 1940 reads as follows:
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That whenever, in the opinion of a judge of a district court of the State of Louisiana about to try a defendant or defendants against whom has been filed any indictment or bill of information, the trial is likely to be a protracted one, the court may cause an entry to that effect to be made in the minutes of the court, and thereupon, immediately after the jury is impaneled and sworn, the court may direct the selection of one or two additional jurors, in its discretion, to be known as alternate jurors. Such jurors must be drawn from the same source, and in the same manner, and have the same qualifications as the jurors already sworn, and be subject to the same examination and challenges ; Provided, that each defendant shall be entitled to one peremptory challenge to each of the said alternate jurors, and the prosecution shall be entitled to one challenge to each of said jurors for each defendant. Such alternate jurors shall be seated near, with equal power and facilities for seeing and hearing the proceedings in the case, and shall take the same oath as the jurors already selected and must attend at all times upon the trial of the cause in company with the other jurors. They shall obey the orders of and be bound by the admonition of the court upon each adjournment of the court; and if the regular jurors are ordered to be kept in custody
 
 *496
 
 during the trial of the cause, such alternate jurtirs shall also be kept in confinement with the other jurors, and except, as hereinafter .provided, shall be discharged upon the final submission of the case to the jury. If, before the final submission of the case, a juror die, or become ill, so as to be unable to perform his duty, the court may order him to be discharged and draw the name of an alternate juror, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors.”
 

 The pertinent part of Section 41 of Article 7 of the Constitution reads as follows:
 

 ‘‘The Legislature shall provide for the election and drawing of competent and intelligent jurors for the trial of civil and criminal cases;
 
 * * *
 
 Cases,
 
 in which the- punishment may b.e at hard labor,
 
 shall be tried by a jury of five,
 
 all of whom must concur to render a verdict; cases, in which,the punishment is necessarily at hard labor, by a jury of twelve, nine of whom must concur to render a verdict;
 
 cases in which the punishment may be capital, by a jury of twelve, all of whom must concur to render a
 
 verdict(Italics ours.)
 

 In the instant case, the alternate juror sat near the jury during the trial of the case and was with the other jurors in the custody of the sheriff at night, but after the evidence was concluded and it was apparent his services would not be needed as a juror, he was excused and, therefore, only the twelve regularly selected and sworn jurors deliberated upon the accused’s case and rendered their verdict.
 

 The wording of Act No. '6 of 1940 and the Act of Congress, adopted June 29, 1932, found in Title 28 U. S. Code Annotated, Section 417a, is almost verbatim. While the constitutionality of the Louisiana statute has never been heretofore determined by this Court, very similar acts of other state legislatures have had their constitutionality determined by the courts of last resort in those states.
 

 In American Jurisprudence, Volume 31, page 630, it is stated:
 

 “ * * * Likewise involving no infringement of the right to trial by twelve jurors, and constitutional, is a statute which provides that whenever, in the opinion of a trial court, the trial is likely to be a protracted one, the court may, immediately after the jury is impaneled and sworn, direct the calling of one or two additional jurors, to be known as ‘alternate jurors,’ who shall have the same qualifications as the -regular jurors, be subject to the same examination and challenges, who, after having taken the same oath as the other jurors, shall be seated near, with equal power and qualities for seeing and hearing the proceedings in the case, who shall attend at all times on the trial in company with the other jurors, and who may be called into the jury box to substitute for any juror dying or being discharged because of illness.”
 

 See, also, People v. Howard, 211 Cal. 322, 295 P. 333, 71 A.L.R. 1385; People v. Mitchell, 266 N.Y. 15, 193 N.E. 445, 96
 
 *497
 
 A.L.R. 791, and State v. McClain, 194 La. 605, 194 So. 563.
 

 It is our opinion that Act No. 6 of 1940 is constitutional, and as the alternate juror did not deliberate with the twelve regular jurors who rendered the verdict in the case, it can not be said that the defendant was tried by a jury of thirteen.
 

 Bill of exception No. 4 was reserved by the accused to the ruling of the trial judge in refusing to .sustain the motion to quash the indictment. This motion was founded upon the allegations that R. W. Henry, after being appointed a jury commissioner for the Parish of Lincoln, Louisiana, had been elected and qualified as a counselman for the Town of Dubach, Louisiana, and was serving in that office on the date that he acted as a jury commissioner in drawing the venire from which the grand jury, which indicted the accused, was selected and, therefore, being incompetent to hold the office as jury commissioner as required by Article 175 of the Code of Criminal Procedure, his acts as a jury commissioner were illegal. In short, Henry vacated his office as jury commissioner by qualifying for the office as a member of the town council. Article 175 of the Code of Criminal Procedure, relied upon by the defendant, provides that a person holding any public office shall be incompetent to occupy the office of jury commissioner. However, the jurisprudence of this State is well-established that the acts of an officer de facto, so far as they affect the public, should be recognized as valid. The case of State v. Phillips, 164 La. 597, 604, 114 So. 171, is in point and decisive of this issue. See, also, State v. White, 153 La. 300, 95 So. 776; State v. Smith, 153 La. 577, 96 So. 127; State v. Mitchell, 153 La. 585, 96 So. 130; State v. Moreau et al., 153 La. 671, 96 So. 527; State v. White, 156 La. 770, 101 So. 136; and State v. Foster, 164 La. 813, 114 So. 696.
 

 The defendant’s attorney has grouped together bills of exception Nos. 5, 6, 7 and 8, all relating to the admissibility of testimony offered in behalf of the State’s case and objected to by defendant. Counsel concedes that even if the Court holds his objections were technically correct, the testimony admitted upon the alleged erroneous ruling, in any particular instance, would be insufficient to show such injury or damage to his client’s case as to warrant the relief sought, but he takes the position that \yhen the four alleged errors are considered jointly, it will appear that the substantial rights of his client were prejudiced.
 

 We shall discuss the bills separately, taking up bill No. 5 first.
 

 The State used four witnesses to prove its case — two eye witnesses, the coroner, and B. J. Taylor. In order to prove intent and motive the district attorney asked Taylor if the witness had any conversation with the accused four or five months before November 24, 1940, the date of the homicide, and what the accused had said. Defendant objected on the ground that the evidence was immaterial and irrelevant. The court overruled the objection and the witness stated in substance that defendant had told him about five
 
 *498
 
 months before the killing, he was going to kill Hal Posey, the deceased, if he did not stop' interfering with him. Defendant can not control the State in its order of proof and the State’s two eye witnesses’ testimony tended to show that the accused, a young man 22 years of age, shot the deceased, a city police officer, when he and his fellow patrolman answered a call at a house, where the defendant and another young man were causing a disturbance, and that the accused opened fire upon the deceased when the officer inquired what was the matter. The evidence was admissible to show intent and motive.
 

 Bill of exception No.
 
 6
 
 was reserved by the defendant when the district attorney asked the coroner of Lincoln Parish if the accused had made a statement to the official at the Ruston-Lincoln Sanatorium on November 24, 1940. Upon the witness stating that the defendant was suffering quite a bit from pain and mental confusion, the defendant’s attorney interrupted the witness and objected to the witness giving the statement made by the defendant on the ground that he was not himself, or was mentally confused at- the time. The court overruled the objection on the ground that objection went to the weight of the evidence and not to its admissibility. The witness then stated that the accused was in pain from a pistol shot wound in the arm and was in a confused mental state due to the fact that he hád been drinking intoxicating liquor and was suffering, and that the defendant kept muttering that he had fixed him good (meaning he had fixed the deceased), and that he had poured them into him (meaning that he had poured the bullets into the deceased); and that the defendant was conscious of the fact that he had killed a man. There is nothing to indicate the accused was not conscious and fully aware of what he was saying. We find no error in the court’s ruling.
 

 Bill of exception No. 7 was reserved by the defendant when the court overruled the defendant’s objection that the district attorney’s question was leading. It appears that Ed Neal, a fellow officer of the deceased, had testified before the coroner’s jury and the Lunacy Commission several months before the trial and the transcript of his testimony was voluminous.
 

 The defendant’s attorney had just finished a lengthy cross-examination of the witness and the district attorney, on re-examination, referred him to pages 1, 2 and 3 of the transcript, where the witness had previously made the statement: ‘T could tell from the fire in his gun that it kind of went down. I didn’t have my gun out at that time.” The district attorney asked the witness to see if he could find that in the transcript. Defendant’s counsel objected, saying that the question was leading and suggestive. The district attorney replied that he was merely trying to save time by directing the witness’ attention to the page in the lengthy transcript, where his previous statement could be found. The witness answered that he found the place of his testimony in the transcript. The transcript had been used by the defense attorney in cross-examining the witness and the State’s attorney was.
 
 *499
 
 entitled to also direct the witness’ attention to a part of his previous testimony and where it could be found in the transcript. The question might be considered leading, but certainly the witness’ reply did not do the defendant any harm or injury.
 

 Bill of exception No. 8 was reserved by defendant to a question propounded by the district attorney to the eye witness, Ed Neal, to show that he had been informed that the defense attorney' would put him through a rigorous cross-examination predicated upon his lengthy testimony previously given before the coroner’s jury and the Lunacy Commission and that the witness had secured a copy of the transcript for the purpose of refreshing his memory. In the cross-examination of this witness, prior to this question, his credibility had been attacked by the defense. The defendant objected to the question on the ground that it was immaterial and irrelevant and assumed a statement of facts not proven and was an attempt on the part of the State to prejudice the jury against him. The trial court instructed the jury to disregard the statements, which passed between the State and defense attorneys, on the ground that what they said was not evidence or testimony and should not be considered by the jury. Whereupon, the district attorney withdrew the question before it was answered. The instruction by the judge to the jury was proper, and the question having been withdrawn by the State, it is clear that the defendant suffered no prejudice as a result of this incident.
 

 Bill of exception No. 9 was reserved to the trial judge’s ruling in sustaining the district attorney’s objection that the defendant’s counsel, in his argument before the jury, was going out of the record. It appears that counsel for the accused was arguing the case before the jury and stated: “I went to Mr. Neal, had known him for a long time, and asked him to give me a statement. He grinned and smiled and said — grinned and smiled as though he knew something I didn’t.” Mr. Neal was a state eye witness and a fellow police officer of the deceased.
 

 There was no evidence before the court to this effect and defendant’s attorney had not testified as to this occurrence. Upon the trial court’s sustaining the district attorney’s objection that counsel should confine himself to the record, defendant’s attorney turned to the judge and said: “Does your Honor say it is traveling out of the record?” The judge replied: “Absolutely.” Thereupon, the bill of exception was reserved on the ground that the trial judge was forbidden by Section 991 of the Revised Statutes from expressing any opinion or commenting upon the facts or evidence in any manner.
 

 In the case of State v. McCollum et al., 135 La. 432, 65 So. 600, this Court held, under very similar circumstances, that the court’s ruling did not amount to expressing an opinion or commenting upon the facts or the evidence of the case. The ruling in State v. McCollum, supra, was approved by the Court in State v. Iverson, 136 La. 982, 68 So. 98.
 

 
 *500
 
 This Court, in the case of State v. Simon, 131 La. 520, 59 So. 975, declared that the trial judge had a right to sustain the State’s objection to the defendant’s attorney traveling out of the record in his argument to the jury, and that this was not a comment upon the facts or the evidence of the case by the judge.
 

 The defendant’s attorney has grouped bills of exception Nos. 10, 11, 12 and 13, reserved to the court’s ruling in refusing to give four ^special charges requested. The trial judge declined to give the requested special charges on the ground that his general charge had fully covered the law, which was also contained in the requested special charges. Defendant’s attorney states, in his brief, that the general, as well as the special charges requested, are in the record and the court can, by comparison, determine whether or not the general charge was ample. He does not point out in what respects the general charge was insufficient. We have read the general and special charges, and.it is our opinion that the judge’s general charge to the jury adequately covered the same legal instruction sought
 
 to
 
 be placed before the jury by the defendant’s requested special charges.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the. verdict of the jury and the sentence of the district court are affirmed.
 

 PONDER, J., dissents.
 

 ODOM, J., dissents from the ruling on Bill of Exception No. 1, except in so far as it is held that O. W. Hogan was not qualified to sit as a juror in the case, and that the trial judge should, have sustained defendant’s challenge of him for cause.
 

 [1]
 

 199 La. 975.